IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PANKAJ SHARMA** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| | : Docket No. 2:20-cv-20268-MCA-MAH |
| **VIVIAN LIU** | : |
| | : |
| Defendant. | : |

## AMENDED COMPLAINT

Plaintiff, Pankaj Sharma ("Plaintiff"), by and through his attorneys, Cohen Fineman, LLC, for his Amended Complaint against Defendant, Vivian Liu (hereafter "Liu"), alleges as follows:

## PARTIES

1. Plaintiff, Pankaj Sharma (hereafter "Sharma") is an adult New Jersey resident currently domiciled at 202 Compton Avenue, Edison New Jersey 08820.

2. Defendant, Vivian Liu (hereafter "Liu") is an adult New York resident currently domiciled in New York City.

3. Sharma is a published and well-respected metallurgical engineering with Con Edison. Sharma has a master's degree in metallurgical engineering and he has worked in that field for over 15 years. Sharma has published several papers in international journals and has received international awards in his field.

4. On information and belief, Liu is currently working for Wolters Kluwer in the field of applied data.

## JURISDICTION AND VENUE

5. The original jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 because the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendant Liu in that, among other things: (a) Defendant Liu is engaged in tortious conduct within the State of New Jersey and in this District, including by making defamatory postings on the Internet directed to Sharma's family, friends, employer and co-workers in New Jersey; and (b) Defendant Liu's conduct causes injury to Sharma within the State of New Jersey.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, omissions and events giving rise to the claims asserted in this Complaint occurred in this judicial district.

## FACTUAL ALLEGATIONS

8. Sharma and Liu knew each other as cordial, platonic friends.

9. Feeling bad that Liu seemed isolated and had few friends, Sharma agreed that Liu could accompany him on a weekend trip to the Poconos (in Pennsylvania) in June of 2019. Liu affirmatively booked the trip.

10. Sharma realized early on in the trip that it was a mistake to have invited Liu, as she turned out to be reckless and engaged in dangerous activities without aforethought.

11. For example, Liu had a physical altercation with another vacationer on a waterslide at Camelback and complained to staff that she suffered a pain in her lower back as a result.

12. Even though she claimed to have continued pain from her former injury (and sought treatment), Liu decided it was a good idea to try ziplining despite Sharma's warnings.

13. Sharma thereafter recommended that Liu try some yoga stretches to alleviate her pain.

14. Despite Liu's physical maladies and incessant complaints, the trip was uneventful for Sharma.

15. Sharma drove Liu home from the Poconos without incident.

16. Roughly a week after the trip, Liu contacted Sharma to meet at the Lantern Thai restaurant in New York City.

17. Thinking that he was just meeting Liu for lunch, Sharma realized that Liu was attempting to blackmail him for $10,000.00 owing to the injuries he allegedly "caused" her by recommending yoga stretches for her back. Sharma was dumbfounded by Liu's accusations.

18. Liu mentioned to Sharma that her brother was a policeman in New York City and that Sharma should "imagine what she could do to him" as a result.

19. Sharma would not entertain paying Liu any amount of money because he was not responsible for her alleged "injuries."

20. From previous conversations, Sharma knew that Liu had no medical insurance through her prior employer, Allazo Health.

21. Sharma also knew that Liu was likely demanding money from him because she was in the process of being terminated by Allazo Health due to alleged misconduct with a senior colleague there.

22. Thinking that he heard the last of Liu after he was not swayed by her attempts at extortion, Sharma was surprised to find that Liu had filed false charges against him for harassment in Monroe County (Poconos, PA) more than five (5) months after their trip.

23. On the advice of counsel, Sharma did not testify at the Magistrate trial. Sharma pleaded "not guilty," and the Court ultimately found in favor of the Commonwealth on one count of summary harassment, which is a misdemeanor.

24. Sharma thereafter appealed the decision to the PA Court of Common Pleas, wherein his trial, by that time, had been postponed three (3) times owing to COVID-19.

25. The stress from dealing with this charge weighed heavily on Sharma, and despite knowing that he was completely innocent, he nevertheless agreed to a plea bargain wherein he accepted admission into a three-month ARD program in exchange for a dismissal of all charges after the program's term expired.

26. The District Attorney and the Common Pleas Court accepted Plaintiff into this program, which he has since completed.

27. Sharma's petition for expungement of the single harassment charge is pending.

28. On information and belief, Liu became livid upon learning that the Monroe County District Attorney had recommended (and the Court subsequently accepted) Sharma into an ARD program that effectively cleared any record of a conviction.

29. Vowing to seek retribution against Sharma, Liu concocted a social media blitzkrieg designed to destroy his reputation, job and well-being by depicting Sharma falsely as a married "molester" and batterer of women.

30. Sharma's claims surround Liu's posting of defamatory and false statements on social media sites, including, but not limited to, Twitter and Facebook.

31. In addition, on information and belief, Liu created and registered an eponymous web page under the website "www.pankaj-sharma.com," (hereafter "Pankaj Sharma website") wherein Liu made defamatory and false statements about Sharma.

32. On information and belief, using the pseudonyms "Ben Downey" and "Blake Bomer," Liu made false and defamatory statements on Sharma's employer, Con Edison's interactive Twitter and Facebook pages alleging that Sharma "was found guilty of harassment" and that he "molested and injured a young woman after he refused to have sex with her." Liu also referenced "The New York Times" under said headings, implying that she is a reporter for the esteemed publication, which is false. True and correct copies of said Twitter and Facebook postings are attached hereto, made a part hereof and marked as Exhibit "A."

33. On information and belief, on the Pankaj Sharma website, Liu alleges that Sharma, in addition to "molest[ing] and injur[ing] a young woman after he refused to have sex with her," also "continued to touch and molest her despite the victim telling him not to touch her. In a fit of anger after the victim rejected his sexual and romantic advances, Sharma intentionally injured the victim and caused long term nerve damage that the victim is still suffering from 16 months later. Sharma became angry because he felt entitled to sex with the victim." Further, Liu specifically noted that "Sharma is married with two children and lives in Edison, NJ." A true and correct copy of said website is attached hereto, made a part hereof and marked as Exhibit "B."

34. Liu used surreptitious means to acquire the private photo of Sharma she used on the Pankaj Sharma website, as it is not a photograph that had been previously circulated or available on the Internet.

35. Liu was afraid to use her real identity in these malicious postings because she knows that said postings are false and defamatory.

36. Sharma categorically denies ever molesting, harassing, soliciting or injuring Liu.

37. Sharma asserts that Liu's allegations are patently false and were made with the specific intent of harming Sharma's good name and reputation in both New Jersey and New York.

38. Liu specifically intended to direct her defamatory communications via interactive social media so that New Jersey residents and social media participants would view and respond to her defamatory postings.

39. Liu posted defamatory statements on Con Edison's interactive Twitter and Facebook pages with the specific intent of convincing Con Edison to terminate Sharma's employment.

40. Specifically, Con Edison's offices and customers are in both New York and New Jersey. A true and correct copy of a website demonstrating Con Edison's connection to New Jersey is attached hereto, made a part hereof and marked as Exhibit "C."

41. Thousands of Sharma's co-workers at Con Edison who have viewed Liu's posting live in New Jersey and have inquired about the veracity of the postings.

42. Liu e-mailed Sharma's wife and told her false and malicious contents about Sharma. Sharma's wife subsequently blocked Liu's email ID and LinkedIn connection, but Liu repeatedly bothered her using different pseudonymous e-mails.

43. Many friends and family members of Sharma who live in New Jersey have asked him about Liu's defamatory postings on social media.

44. At one time Sharma had more than 6,000 professionals following him on LinkedIn, including more than 500 in New Jersey. As a result of Liu's conduct, Sharma, due to stress and humiliation, has had to delete his LinkedIn account.

45. Liu's false and defamatory postings about Sharma amount to libel per se and have caused Sharma severe harm to his personal and professional reputation.

46. Sharma's professional advancement at Con Edison has been impacted by Liu's actions.

47. Sharma has suffered physically and emotionally from the harm and stress caused by Liu, as he is now being treated professionally for resultant psychological injuries.

## COUNT I --DEFAMATION

48. Sharma restates and incorporates by reference, as if fully restated herein, the allegations in Paragraphs 1 through 147, *supra*.

49. Based on the foregoing, Liu's pseudonymous postings on social media and allegations on the Sharma website are *per se* defamatory.

50. Sharma asserts that he never molested, harassed, solicited or injured Liu. Liu's claims are patently false.

51. The defamatory statements made by Liu about Sharma have subjected Sharma to ridicule and contempt, have harmed Sharma's personal and professional reputations by lowering the community's estimation of him and have jeopardized his employment with Con Edison.

## COUNT II – FALSE LIGHT

52. Sharma restates and incorporates by reference, as if fully restated herein, the allegations in Paragraphs 1 through 51, *supra*.

53. Based on the foregoing, Liu's pseudonymous postings on social media and allegations on the Sharma website depict Sharma in a false light.

54. The false light in which Sharma was placed, namely that he is convicted sexual predator and abuser, would be highly offensive to a reasonable person.

55. On information and belief, Liu had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Sharma would be placed by her actions.

56. The false light in which Sharma was placed has exposed him to ridicule and contempt, has harmed Sharma's personal and professional reputations by lowering the community's estimation of him and has jeopardized his employment with Con Edison.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Pankaj Sharma, prays that this Court enter judgment in his favor on each and every claim for relief set forth above and award him relief including, but not limited to, an Order:

1. Preliminarily and permanently enjoining Defendant, Vivian Liu, from posting anything on the Internet and/or social media relating to Plaintiff, Pankaj Sharma, that is defamatory or depicts him in a false light.

2. Requiring Defendant, Vivian Liu, to take down any and all websites and/or social media postings that contain defamatory statements regarding Plaintiff, Pankaj Sharma, or that depict him in a false light.

3. Awarding Plaintiff, Pankaj Sharma, monetary relief including damages sustained by him in an amount not yet determined, including actual damages, reputational damages, and/or psychological damages in an amount in excess of $5,000,000.

4. Awarding Plaintiff his costs and attorneys' fees in this action.

5. Awarding such other and further relief as this Court may deem just and appropriate.

Plaintiff demands a trial by jury.

Respectfully submitted,

COHEN FINEMAN, LLC
/s/Samuel B. Fineman
Samuel B. Fineman, Esq.
NJ ID No. 005381999
1999 Marlton Pike E., Suite 4
Cherry Hill, NJ 08003
(856) 304-0699 – tel.
(856) 489-5088 – fax
sfineman@cohenfineman.com
Counsel for Plaintiff, Pankaj Sharma

Dated: February 11, 2021

## CERTIFICATION OF SERVICE

I, Samuel B. Fineman, Esquire, hereby certify that a true and correct copy of the foregoing Amended Complaint of Plaintiff, Pankaj Sharma, pursuant to Rule 15(a)(1)(B), was served via First-class, U.S. mail and e-mail upon the following counsel of record on the date set forth below:

**Daniel Szalkiewicz & Associates, P.C.**
**Daniel S. Szalkiewicz, Esq.**
**Attorneys for Defendant Vivian Liu**
**116 Pinehurst Avenue, Suite A44**
**New York, NY 10033**
**Tel: (212) 706-1007**
**Fax: (914) 500-2315**
**daniel@lawdss.com**

COHEN FINEMAN, LLC
/s/Samuel B. Fineman
Samuel B. Fineman, Esq.
NJ ID No. 005381999
1999 Marlton Pike E., Suite 4
Cherry Hill, NJ 08003
(856) 304-0699 – tel.
(856) 489-5088 – fax
sfineman@cohenfineman.com
Counsel for Plaintiff, Pankaj Sharma

Dated: February 11, 2021