# EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DANIEL SZALKIEWICZ & ASSOCIATES, P.C. and
DANIEL SZALKIEWICZ,

Plaintiffs,                              **SUBPOENA DUCES TECUM**

-against-                                  Index No.: 150713/2024

VIVIAN LIU a/k/a VIVIAN XUANFEI LIU a/k/a
XUANFEI LIU,

Defendant.,

## 𝕿𝖍𝖊 𝕻𝖊𝖔𝖕𝖑𝖊 𝖔𝖋 𝖙𝖍𝖊 𝕾𝖙𝖆𝖙𝖊 𝖔𝖋 𝕹𝖊𝖜 𝖄𝖔𝖗𝖐

TO:     Compliance Department
        GoDaddy.com, LLC
        2155 E. GoDaddy Way
        Tempe, AZ 85284 USA

***GREETING:***

WE COMMAND YOU, *that all business and excuses being laid aside, to produce complete and accurate copies of those documents in your possession, custody or control listed in "Documents to be Produced" to Daniel Szalkiewicz, Daniel Szalkiewicz & Associates, P.C., 23 West 73rd Street, Suite 102 New York, New York 10023, attorneys for the Plaintiff, on or before January 31, 2025.*

**YOUR TESTIMONY AND DOCUMENTS ARE REQUIRED BECAUSE YOU HAVE SPECIAL KNOWLEDGE REGARDING PERTINENT FACTS WHICH ARE IN ISSUE IN THIS MATTER, INCLUDING, BUT NOT LIMITED TO, YOUR KNOWLEDGE OF FACTS AND CONTROL OF DOCUMENTS AND/OR ELECTRONICALLY STORED INFORMATION RELATING TO THE INDIVIDUAL WHO CREATED THE WEBSITE DANIELSZALKIEWICZ.COM (SEE ATTACHED COMPLAINT [EXCLUDING EXHIBITS]).**

*Failure to comply with this subpoena shall be punishable as a contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued for a penalty not to exceed fifty dollars and all damages sustained by reason of your failure to comply.*

*Unless this Subpoena Duces Tecum directs the production of original documents for inspection and copying at the place where such items are usually maintained, it shall be sufficient to deliver complete and accurate copies of the items to be produced.  The requirements of this subpoena may also be met by delivery of the material by mail or overnight delivery service, or email to the following email address, provided that it is received on or before the return date set forth herein: daniel@lawdss.com.*

Dated: New York, New York
      January 9, 2025

                                              _____

| |
|---|
| **For further information, contact:**<br>**Daniel S. Szalkiewicz, Esq.**<br>**(212) 706-1007** |

DANIEL S. SZALKIEWICZ, ESQ.
DANIEL SZALKIEWICZ & ASSOCIATES, P.C.
*Attorney for Plaintiff*
23 West 73rd Street, Suite 102
New York, New York 10023
(212) 706-1007
Fax: (646) 849-0033

## SCHEDULE A
## Documents to be Produced

All information in your possession or within your custody or control, regarding or which may be used to uncover, the identity of the individual(s), subscriber(s), customer(s), account holder(s), user(s) or other entities (the "User") who created and/ or has accessed and/ or utilized the following Website account hosted/registered by you:

Danielszalkiewicz.com

The Information you are to provide includes but is not limited to:

a.   Any and all registration and related records regarding the identification of any person or persons associated with the Website to include real name, status of account, date(s) account was opened and/ or closed, as applicable;

b.   Internet Protocol (IP) and Media Access Control (MAC) address of the User at the time the Website Account was established;

c.   Mailing address(es), residential address(es), business address(es), email address(es), telephone number(s), and any other contact information of the User;

d.   Alternate or recovery contact name(s), telephone number(s), e-mail address(es), other User number, or identity, if any, provided on the date the Website Account was established or at a later time;

e.   Connection and access logs and records of User activity for Website Account, including log-in/access history, times, dates, IP address(es), most recent temporarily assigned network address, MAC addresses, and/or machine names, if any, used to access the Website Account, and records identifying sent and received communications;

f.   Any records or data that would show failed login attempts to the Website Account, to include IP addresses and any other pertinent logs or records, and associated times and dates of any attempts;

g.   Any location data stored relating to the IP addresses for the subject time period or account;

h.   Logs of devices and device information used to access the account during the subject time period;

i.   Copies and drafts of the website Danielszalkiewicz.com;

j.   A complete list of all other domain names and services associated with the Shopper ID or Private Label ID, including, but not limited to, the domain list, domain information, contact audit history, shopper contact audit, and legal receipt for the Shopper ID.

You are to provide the following information as ELECTRONIC FILES IN THE FORMAT IN WHICH THEY ARE STORED AND RETRIEVED (Native Format) FROM YOUR COMPUTER SYSTEMS OR ANY COMPUTER SYSTEMS CONTROLLED, LEASED OR UTILIZED BY YOU, for example web server logs should be provided in text format with all information for each entry intact.

**\*\*\*\***

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

DANIEL SZALKIEWICZ & ASSOCIATES, P.C. and
DANIEL SZALKIEWICZ,

Plaintiffs,

-against-

VIVIAN LIU a/k/a VIVIAN XUANFEI LIU a/k/a XUANFEI
LIU,

Defendant.

**VERIFIED SECOND
AMENDED COMPLAINT**

Index No. :

---

Plaintiffs DANIEL SZALKIEWICZ & ASSOCIATES, P.C. ("DS&A") and DANIEL

SZALKIEWICZ ("Szalkiewicz" and, with DS&A, "Plaintiffs"), as and for their Verified

Complaint hereby allege, upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.      For close to three years Defendant VIVIAN LIU a/k/a VIVIAN XUANFEI LIU

a/k/a XUANHEI LIU ("Liu" or "Defendant") has been attempting to extort money from two of

her former attorneys through harassing conduct, culminating in her paying a would-be hitman

$25,000.00 to kill Szalkiewicz.

2.      Plaintiffs bring this action to seek peace from a vindictive former client who has

done everything in her power destroy Plaintiffs' life.  Conversely, Liu views this lawsuit as

another way for her to enrich herself, demanding money in exchange for stopping her destructive

campaign.

3.      Plaintiffs were hired and did act and appear as attorneys for Liu in a defamation

lawsuit filed against her in Middlesex County, New Jersey by a former colleague, P.S. ("P.S.").

1

4.      The lawsuit (annexed hereto as **Exhibit 1**) alleged Liu had anonymously contacted P.S.'s employer on social media and anonymously created a website in P.S.'s name with false claims that P.S. "was found guilty of harassment" and had "molested and injured a young woman after he refused to have sex with her."

5.      Believing that Liu was the victim of a sexual assault, Plaintiffs agreed to take on Liu's matter.  However, Liu's story almost immediately began to unravel, as it was revealed she was accused of extorting P.S. and his lawyer in exchange for removing the websites.

6.      Plaintiffs, on behalf of Liu, successfully demanded transfer of the case to federal court and, following the transfer, P.S. amended his complaint against Liu (**Exhibit 2**), including allegations that "Liu was attempting to blackmail him for $10,000.00 owing to the injuries he allegedly 'caused' her by recommending yoga stretches for her back."

7.      Liu admitted to creating the website and contacting P.S.'s employer (**Exhibit 3**, ¶¶10-11).

8.      Plaintiffs represented Liu in that matter for nearly one year – filing two motions to dismiss and filing a summons with notice in New York Supreme Court, among other legal work – before bringing an Order to Show Cause seeking relief from representation after months of requesting Liu find new counsel (annexed hereto as **Exhibit 4**).  The supporting declaration cited that "conflicts have arisen between our firm and Ms. Liu which lead us to seek withdrawal as attorneys in this matter."

9.      What Plaintiffs were prevented from stating due to privilege was an overwhelming suspicion that they had unwittingly been used and manipulated by Liu to further her plot to extort P.S.

FILED: NEW YORK COUNTY CLERK 08/09/2025 03:06 PM
NYSCEF DOC. NO. 168

INDEX NO. 150713/2024
RECEIVED NYSCEF: 08/09/2025

Case 2:25-cv-20268-MCA-AME    Document 55-2    Filed 07/02/25    Page 7 of 47 PageID:
474

10. Following Plaintiffs' representation of Liu, she began to engage in a harassive course of conduct against Plaintiffs which she indicated was designed to harm Plaintiffs' business so they were forced to pay her money for relief.

11. More specifically, Liu created a website using Plaintiff Szalkiewicz' true name which she used and continues to use to impersonate and disparage Plaintiffs. Liu also routinely creates and updates online reviews about Plaintiffs on sites like Yelp, Avvo, BBB, and Google.

12. A sampling of the harassive messages Liu sent following the conclusion of Plaintiffs' representation highlights the maliciousness of her acts:

- *Please die.* 🙏
- *Go fucking die you piece of shit.*
- *You're an entitled piece of garbage, you won't refund me but are demanding that I stop texting you. Why do I have to do what you want?*
- *You should die you money hungry scam artist. Return my money you greedy piece of garbage.*
- *Return my money you scum. With the review, anyone who looks you up knows the kind of lawyer you are, your business will continue to suffer.*
- *I'll make sure this follows you for the rest of your pathetic career, you greedy disgusting pig.*
- *If you have the balls to blow up your own life and your family's, then do it, because you will be the one ending up being prosecuted which you would deserve for diverting police and prosecutorial resources from real crimes to someone sending you critical text messages.*
- *I hope you get hit by a car and end up unable to walk and in pain every day you piece of garbage. I hope lawyers take advantage of you so they can make a living off of you and no one help you. It's because of you I will never get justice for what P.S. did to me. Go fucking die.*
- *The world would be a better place without garbage people like you, the legal profession would be better place without shitty money hungry lawyers like you. Go off yourself. Die you piece of shit.*
- *You're despicable and disgusting, the way you pretend to want to help people. In reality, you fuck your own clients over and never apologize. Where is your conscience that you kept saying you have? You are such a piece of garbage. You deserve to go out of business and lose your license.*
- *Hey asshole! When are you going to call the police and have them put me in jail? What?No balls because you know criticizing you isn't a crime and this isn't harassment. You said my texts were absurd, how about calling the police because you don't like being criticized? Return my money asshole.*
- *Return my money you fucking garbage person*

3

- *Return the amount you scammed from me and I'll stop texting you.*
  Copies of the nonprivileged portions of the text messages are annexed hereto as
  **Exhibit 14**.

13.    Among the many themes of Defendant's harassive text messages were statements

that she would stop harassing Plaintiffs if they refunded her legal fees, including: "Return the

amount you scammed from me and I'll stop texting you" and "Since you won't return the

money, that's fine.  I look forward to costing you as much as you've cost me."

14.    Eager to end the harassment, Plaintiffs provided Liu with a settlement agreement

whereby she agreed to stop attacking Plaintiffs in exchange for a full refund of her paid fees.

15.    When Liu was asked why she had not just asked for a refund rather than

relentlessly harass Szalkiewicz, she replied "Okay. I don't think you would have agreed to it a

year ago, **not without any effect on your business.** Include in the agreement that it will be

wired since checks can bounce and the agreement is void if the money is not received."

(*emphasis added*).

16.    After receiving the settlement agreement, Liu apparently believed she could extort

more money from Plaintiffs than her legal fees and indicated the money was not enough for her

to discontinue her course of conduct.

17.    Recognizing that her past victim had only paid her after she created a website in

his name, Liu purchased the domain name DanielSzalkiewicz.com with the sole intention of

receiving money in exchange for its removal and transfer of the domain.

18.    Defendant, a data scientist, was aware the value of her domain name depended on

its Google ranking.  To ensure it appeared prominently in Plaintiffs' results, Defendant

undertook steps to optimize her website, including using hyperlinks, pictures, and repeated

phrases in text.

4

19.    When a higher offer did not come, she uploaded the settlement agreement onto the website she had created – redacting the laundry list of offenses she had committed against Plaintiffs – to make it appear as though the refund was based on Plaintiffs' misconduct as opposed to their desire to be free from Defendant's ongoing threats and harassment.

20.    Plaintiffs have come to learn that Defendant Liu has undertaken nearly identical conduct against the third firm she hired to represent her in the defamation case against her, repeating the claims she is making against Plaintiffs in this action nearly verbatim (*Mancilla & Fantone, LLP et al v. Vivian Liu*, 450521/2024).

21.    Because Defendant Liu has created all three known websites anonymously, only Defendant Liu knows how many other individuals and companies she is currently harassing or has previously harassed online.

22.    Plaintiffs have done everything within their power to resolve this matter without involving the courts but have finally come to realize that giving into Liu's extortionate demands is not a permanent solution and the only way to obtain relief from Liu's hate-fueled attacks is to initiate a legal claim against her.

23.    Once Plaintiffs initiated the current lawsuit, Liu set a price for the return of the domain name: first $50,000.00, then $60,000.00.

## THE PARTIES

24.    Plaintiff Szalkiewicz is and was, at all times relevant to this action, a resident of the County of New York, State of New York.

5

25.     Plaintiff DS&A is and was, at all times relevant to this action, a law firm and a domestic professional corporation organized under the laws of the State of New York.

26.     DS&A maintains and has always maintained its principal place of business in the County of New York, State of New York.

27.     Defendant is and, at all times relevant to this action was, a resident of the County of Kings, State of New York.

## STATEMENT OF FACTS PERTAINING TO ALL CAUSES OF ACTION

### I.     Liu Attempts to Extort Former Friend of $10,000, When he Refuses, Files Police Report and Creates Website

28.     Liu and her former friend, P.S., were classmates at NYC Data Science Academy. After spending months together and despite knowing P.S. was married with two children, Liu decided to share a room with P.S. on a vacation to the Poconos.

29.     While on vacation, Liu was playing in the waterpark when a teenager ran into her, causing apparent soreness.  However, Liu continued with the parties' planned activities and did not ask to return home, instead suggesting she may go for a massage.

30.      When Liu returned home, she became convinced something was wrong with her back.  She went to numerous doctors and were told by each of them that her results were unremarkable.  However, having spent the weekend with a married man, Liu took the opportunity to extort P.S. for the alleged injuries she allegedly sustained on their trip.

31.     P.S. initially agreed to pay for her medical bills; however, as Liu was unable to find a doctor to provide her with a legitimate diagnosis, Liu decided to demand $10,000 from P.S.

6

32. When he refused, Liu emailed P.S.' wife, accusing him of making uninvited and unwanted sexual advances toward her. P.S. responded with a request that she stop. Despite Liu's harmful contact, he continued to refuse to pay her demand.

33. Apparently recognizing she had not caused P.S. enough harm, Liu filed a police report against him for sexual misconduct. Despite now having to face potential criminal charges, P.S. still refused to pay Liu.

34. Liu, a data scientist who had been working at Wolters Kluwer, decided to create numerous fake social media accounts and a website to harass P.S. into paying her.

35. Using the social media accounts, Liu began reaching out to P.S.' employer to accuse him of sexual misconduct.

36. Now jeopardizing his livelihood, Liu's conduct had finally struck a nerve; P.S. retained a lawyer who sent Liu a cease and desist letter.

37. Believing she had finally so harmed P.S. that he would be willing to pay for relief from her harassment, Liu again demanded $10,000 from P.S.

## II.    Liu is Sued for Defamation, Invasion of Privacy; Retains Plaintiffs

38. On October 27, 2020, P.S. filed a Verified Complaint against Liu in the Superior Court of New Jersey, Middlesex County (**Exhibit 1**).

39. The Verified Complaint alleged, among other things, that Liu had "created and registered an eponymous web page under the website 'www.[P.S.' full name].com,'…wherein Liu made defamatory and false statements about P.S." (**Exhibit 1**, ¶6).

40. P.S. also alleged that Liu "using…pseudonyms…made false and defamatory statements on [P.S.'] employer, Con Edison's interactive Twitter and Facebook pages alleging

that [P.S.] 'was found guilty of harassment' and that he 'molested and injured a young woman after he refused to have sex with her.'" (**Exhibit 1**, ¶7).

41.     On November 9, 2020, Liu consulted with Plaintiffs about representing her in the lawsuit. Believing she was the victim of a sexual assault, Plaintiffs' agreed to handle Ms. Liu's matter.

42.     Liu, convincingly at first, told a narrative of someone who took advantage of her and then sued her after she tried to publicize his actions.

43.     Despite the admission that she attempted to obtain $10,000 in exchange for stopping her campaign of harassment, Liu was able to convince Plaintiffs that she was innocent, truly physically injured, and had mountains of evidence against P.S. Believing her representations, Plaintiffs agreed to represent her.

44.     Liu indicated the state court judge had immediately granted P.S. an injunction against Liu and she believed he would be unsympathetic toward her moving forward. Liu further indicated concern that a male judge would be biased against her. With Liu's interests in mind and because Liu was, in fact, a resident of New York, it was decided that the best course of action was to transfer the case to federal court and file a motion to dismiss.

45.     As anticipated, the case was removed to federal court and Plaintiffs filed a motion to dismiss; shortly after, P.S. filed a far more detailed Amended Complaint (**Exhibit 2**).

46.     The Amended Complaint alleged that the two had gone on a weekend trip to the Poconos, during which time Liu got injured during a physical altercation with another vacationer, proceeded to go ziplining despite her injury and then, upon the parties' return to the greater New York/New Jersey area, invited P.S. for lunch where she attempted to blackmail him into paying her $10,000 (**Exhibit 2**, ¶¶9-17).

47.     The Amended Complaint provides that when P.S. declined to pay Liu the demanded amount, she filed charges against him for harassment (**Exhibit 2**, ¶22). The Amended Complaint continues, describing a pattern of harassment nearly identical to the one undertaken by Liu against Plaintiffs, down to her creation of a website in P.S.' name (www.[P.S.'s full name].com) and multiple posts on social media furthering her claims (**Exhibit 2**, ¶¶30-33). Like Liu's attacks against Plaintiffs in this case, her online harassment against P.S. was undertaken anonymously.

48.     The Amended Complaint also alleged that Liu had personally contacted P.S.' wife via LinkedIn and, after P.S.' wife blocked Liu, that "Liu repeatedly bothered her using different pseudonymous e-mails" (**Exhibit 2**, ¶¶42).

49.     Liu openly admitted to posting the information online in a pro se complaint she filed in a case she brought against P.S. in New York (**Exhibit 5**, ¶47).

### III.    The Attorney Client Relationship Begins to Unravel

50.     Almost immediately after removing the case to federal court, the attorney client relationship between Plaintiffs and Liu began to unravel.

51.     Prior to and after filing the motion to dismiss in the federal case, Plaintiffs informed Liu of the high bar she would face on a motion to dismiss and that her case had weaknesses.

52.     Plaintiffs also came to learn, in bits and pieces, that she had initially misled them about her connections to New Jersey and, in fact, that she had a strong New Jersey presence as her home office was in New Jersey and was regularly present in the state.

53.     Plaintiffs' repeated reminders to Liu that her motion to dismiss was not guaranteed to result in dismissal were viewed by Liu as indicative of a scheme to hurt her.

54.     More specifically, Liu became paranoid that Plaintiffs were trying to force her to settle and colluding with opposing counsel to accomplish just that.

55.     Liu would call Plaintiffs numerous times in one day for seemingly no reason but to complain and make accusations about P.S.' counsel.  When Plaintiffs cautioned Liu about speculating and maligning P.S.'s attorney, they were met with accusations that Plaintiffs were protecting P.S.'s attorney for nefarious reasons.

56.     At the same time, despite repeated requests, Liu refused to turn over complete copies of correspondence between her and P.S.  Text message chains, email chains, or any other data Plaintiff's firm would normally request when filing a motion or litigating a case were all withheld.  When Liu did turn over information, it was often highly redacted.

57.     Throughout the entirety of Plaintiffs' representation of Liu, she refused to produce her text message chain with Shama, instead typically segregating single messages sent by him so Plaintiffs were unable to view them in context.

58.     More so, Liu became obsessed with finding ways to publicly harass and shame P.S. and his lawyer to obtain a favorable settlement.

59.     Numerous conversations between Liu and Plaintiffs devolved into attempts to dissuade Liu from filing an ethics complaint against P.S.' lawyer for performing his job.  At one point, Liu became convinced that P.S. found his lawyer on a child predator site because she had come to learn that P.S.' lawyer's thesis was on Vladimir Nabokov, the author of Lolita.

60.     Liu also became interested in Plaintiffs' web presence and business model of how attorneys use the internet to reach clients.

10

13 of 46

61.    Liu spent hours on the phone with Plaintiffs asking about software programs available to lawyers to bolster their internet presence and offered to redesign Plaintiffs' website and help market the firm.  Plaintiffs declined.

62.    Additionally, on August 17, 2021, Liu sent to Plaintiffs an e-mail entitled "final version of narrative, strengths and weaknesses of case" to which an eight-page document was attached.

63.    Among other departures from reality, the document outlined how Liu's diagnosis and treatment was based on her thousands of hours she had personally spent diagnosing and treating the alleged nerve damage from which she suffered.  Notably, according to Liu she saw "4 physicians, one internist, 3 specialists.  Two of the specialists were neurologists" but not one of them was able to find anything conclusively wrong with her.

64.    The document contained information about two of the doctors with whom she consulted.  The first, according to Liu, "misinterpreted" her reports of the injury, attributing them to her exercise regimen, not P.S.

65.    The second doctor, a neurologist, indicated her MRIs did not show anything clinically significant.  The e-mail, which Liu inserted into the document, indicated: there "is no compelling evidence for arachnoiditis.  There is possibly a small subdural collection – I am not sure this is clinical significant…"

66.    Liu's document led Plaintiffs to the uncomfortable realization that her injuries were entirely self-diagnosed.  Indeed, Liu wrote "I planned on compiling research and case studies and then showing the research to a physician or the first physician I saw and see if they could put on the record that the findings in the MRI can cause sciatica or sciatic symptoms.  If

it's the first physician that I saw then I would remind him that he misinterpreted what I said and hopefully he changes it in his notes."

67. Ultimately, Liu wrote that she "spent many months doing research to figure out how to accelerate the healing of severe nerve damage" and that she "can probably fix the imbalance in the left and right side of her own but it likely will require a few more months of research and potentially help of a physical therapist…"

68. The document further demanded that the Complaint against Liu include information about P.S.' alleged academic fraud, that P.S. cheated or tried to cheat on his wife, that he betrayed his then friend, and that he blamed the poor performance of his model at work on a co-worker, among other claims.

69. The document's section devoted to "Strategy and Leverage" further threatened that she had no intention of ever stopping her harassment:

> Strategy and Leverage
>
> 1. Most likely, the only way he will settle is if he runs out of money or when he understands that I have no intention of ever stopping and understands what will happen if he does not settle. If Sharma does not settle:
>
> 1. I will continue posting about Sharma's criminal record and what he did to me. This will prevent him from getting a green card, USCIS does a background check during the green card approval process. This will also make him unemployable because employers will google him. Sharma is a narcissist and believes himself to be special, he will never be okay with allowing this information to be public on the first page of google.com.
>
> 2. I'm willing to spend years fighting Sharma in court.
>
> 3. I will never sign anything where I can't post or speak about what he did as long as there's no satisfactory settlement where he makes what he did right.
>
> 2. Maximizing Sharma's cost of legal battle in time and money. If we sue him in NY, he'll have to retain a second attorney or Fineman will represent him in NY pro hac vice. Fineman will have to spend time learning NY law which increases Sharma's cost. If he hires a new attorney admitted to practice in both NJ and NY, then there will still be increased costs associated with the transition.

12

70.     Liu's communication made Plaintiffs exceptionally apprehensive about the legitimacy of her underlying claims and Plaintiffs began expressing pushback.

71.     Additionally, Liu insisted the best way to obtain money from P.S. was to publicly humiliate him. Despite having no bearing on her potential sexual assault case, Liu directed Plaintiffs to focus heavily on irrelevant information, such as what she referred to as his academic fraud.

72.     Liu became increasingly threatening and, on March 6, 2021, Plaintiffs indicated, based on Liu's misstatements, they could no longer represent her.

73.     Against Plaintiffs' better judgment, they stayed on the case for another 7 months, because Liu insisted, she could not find another attorney and Plaintiffs did not want to harm her case.

## IV.    **Liu Cycles Through Four Firms**

74.     DS&A first appeared as Liu's attorney in the state court action on November 2020, shortly thereafter filing a motion to remove the case to federal court (**Exhibit 6**).

75.     Once the case was moved to federal court, Plaintiffs filed two motions to dismiss, each one unique due to P.S.' amending of his underlying complaint (**Exhibit 7**).

76.     Plaintiffs further filed a Summons with Notice against P.S. in New York Supreme Court to preserve Liu's claims against P.S. there (**Exhibit 8**).

77.     While Plaintiffs began to draft a Complaint against P.S., they ultimately found themselves unable to create compelling pleadings due to facts learned and conclusions drawn during numerous conversations with Liu and documents and evidence sent by her.

78.     No longer comfortable with the legitimacy of Liu's claims, Plaintiffs filed an Order to Show Cause to withdraw as counsel on October 26, 2021 (**Exhibit 7**, p. 5).

79.     David D. Lin, Esq. was substituted as attorney on October 27, 2021 (**Exhibit 7**, p. 5).

80.     Thereafter, Mr. Lin contacted Plaintiffs' office for information about the case to help him proceed with the action.  However, Liu specifically directed Plaintiffs not to provide him with her case file, as she only wanted him to have access to certain documents.

81.     On November 9, 2021, Robert Mario Fantone, Esq. was substituted for David D. Lin, Esq. (**Exhibit 7**, p. 5).

82.     On February 24, 2022, Robert Mario Fantone, Esq. filed an Order to Show Cause to withdraw as counsel (**Exhibit 7**, p. 5).

83.     Elena Fast, Esq. filed a notice of appearance on June 11, 2022 (**Exhibit 7**, p. 5).

84.     A text order dated July 19, 2022 indicates P.S. and Liu were making efforts to settle the case and a letter submitted by P.S.' counsel on August 25, 2022 indicated the parties had entered into a confidential settlement agreement (**Exhibit 9**).


## V.     Attorney-Client Relationship Ends; Liu Alludes to Future Harassment

85.     Plaintiffs' motion to withdraw as counsel was administratively terminated on October 29, 2021 as Liu retained new counsel (**Exhibit 10**).

86.     Szalkiewicz notified Liu that DS&A no longer represented Liu and directed her to cease all contact unrelated to assistance with Liu's legal file.

87.     Just days later, on November 2, 2021, Liu's text message threats and harassment against Plaintiff Szalkiewicz began and continued for over a year:

- *You're a fraud and a horrible attorney. You should stop advertising yourself as a saint who helps victims, those blatant lies on your website. You caused me so much unnecessary stress and grief because of your lack of respect for other people's time and your feeling that it's beneath you to return calls and messages. You're so disorganized, you can't get it together to help anyone except to cover your own ass. What drives you is not your desire to help clients but your ego and hero complex. This has been a disaster. (November 2, 2021)*
- *You're not as good of a person or attorney as you think you are. As attorney you are aware of statute of limitations, how do you justify wasting half a year of a client's time after they have informed you that they want to sue someone who sexually assaulted them and still claim that you've done nothing wrong? We'll find out if that's the case. (November 8, 2021)*
- *You're never sorry, unfortunately, you're only ever sorry that your conduct and actions are not well received. I would have appreciated if you had not wasted half a year of my time. What's inappropriate is how unprofessional your conduct was. There are no threats in the messages, it is to inform you. (November 8, 2021)*
- *Whether or not your conduct was unprofessional and unethical, it's not for us to decide at this point. (November 9, 2021)*
- *The messages inform you why, it's not because I want to harm you but because you have harmed me and my case. It's actually a service to you to know in advance. (November 9, 2021)*
- *You already know (November 9, 2021)*
- *What don't you know? (November 9, 2021)*
- *I hired David who I didn't trust but has experience with defamation cases and who charged me $90 to just to sign a substitution form. I ended up hiring a greedy lawyer who I can't trust because of you. It's delusional and ridiculous that you insist you have only helped me. (November 9, 2021)*
- *Yes, there will be a complaint against you. (November 11, 2021)*
- *There will also be a complaint against you with the grievance committee. It's unfortunate that you lack ethics. (November 12, 2021)*
- *I'm just telling you what is going to happen. (November 12, 2021)*
- *You can write all the fake positive reviews you want, I'll continue to expose the trash that you are in my review (September 17, 2022)*
- *Return my money you fucking garbage person (February 11, 2022)*

(**Exhibit 14**).

88.     Liu's November 9, 2021 messages alluded to the harassment she had planned and

explained her smear campaign was being undertaken in retaliation for the perceived harm

Plaintiffs had caused her and for not receiving a refund on her fees.

15

## VI.    Liu's Online Harassment – Social Media

89.    Privately, Liu's behavior toward Plaintiffs became increasingly aggressive as time passed, morphing from complaints about case strategy and assorted misrepresentations of truth to directions that Plaintiff Szalkiewicz kill himself.

90.    Publicly, Defendant Liu's allegations were as abundant as they were creative, spinning tiny truths into factual inaccuracies and strategically omitting details to turn herself into a victim.

91.    Overall, Defendant Liu's behavior can only be described as being specifically designed to harm Plaintiffs' business with knowing disregard for the mistruths she needed to make to do it.

92.    Importantly, Liu would write reviews using other people's names, attempting to create the fraudulent appearance that she was not the only person aggrieved by the allegations she concocted against Plaintiffs.

93.    While Liu's harassment was disruptive, it also reaffirmed Plaintiffs' suspicions about the legitimacy of Liu's allegations about P.S. and decision to withdraw from her case.

### i.    Defendant Liu's Google Reviews

94.    Since Plaintiffs withdrew as Liu's attorneys, Liu has written multiple false and derogatory online reviews on Google's review platform using her true name, her initials, and pseudonyms.

95.    The current version of Liu's Google Business Review of Daniel Szalkiewicz & Associates, P.C. provides:

16

Daniel threatened to make a false report to the police and have me falsely arrested for a crime after I confronted him about him lying to me, not doing his job and charging me thousands of dollars. He tried to force me to remove the review to protect his business. Daniel pays for/writes fake positive reviews to bury and contradict negative reviews. He's writing reviews thanking himself for imaginary work he never did and then responding to the reviews as himself. I have the call logs and text messages to prove that he never called me back. I have proof of him threatening me and more.

Daniel charged me many thousands of dollars to write a motion to dismiss that he knew would fail. He did not gather or provide any evidence to support the motion despite having months to do so. He encouraged me not to countersue which was against my best interest and lied to me about which state had personal jurisdiction. He procrastinated for half a year while the statutes of limitations were running out then angrily blamed me for him not completing the work. He never returned calls. Daniel is very good at pretending that he's a good guy who wants to help you. Daniel advertises himself as someone who helps victims but that's all marketing. Daniel will take your money and take advantage of the fact that you don't know the law. You will not get the treatment and respect you deserve from Daniel. He only cares about money, he does not care how his conduct adversely affects you or your case.

96.     Upon information and belief, other Google Reviews were made on April 20, 2022; March 26, 2022; May 31, 2022; and August 7, 2022.  These reviews were nearly identical as the ones above, alleging "Daniel threatened me after I confronted him about him lying to me, not doing his job and charging me thousands…"

97.     On or about March 22, 2022, using her true name, Liu wrote a one-star review on Google's review platform.

98.     Fake names used by Liu to leave negative reviews on Google's review platform include David W, who wrote a one-star review on May 13, 2022 and Peter Isaac, who left another one-star review on October 11, 2022 which stated, in part "Would not recommend. Terrible attitude and very poor communication skills.  He is too lazy to answer emails or pick up…"

ii.    **Defendant Liu's Yelp Reviews**

99.    On or about December 17, 2021, Liu wrote the following one-star review on

Yelp:

> Daniel advertises himself as someone who helps and fights for victims but
> that's all marketing, that's not who Daniel is. Daniel procrastinated for half
> a year while the statutes of limitations were running out then angrily
> blamed me for him not completing the work. He repeatedly lied about
> working on the case. It took him half a year to begin working on the case.
> Daniel never returned any of my calls during the year he was my lawyer.
> Daniel feels that the rules of professional conduct that attorneys have to
> follow shouldn't apply to him. You will not get the treatment and respect
> you deserve from Daniel. You will be working harder on the case than he
> is. Daniel does not care about clients.
>
> Update: Daniel sent me messages after seeing this review, his only
> concern was the review and protecting his business. He did not care how
> his conduct adversely affected me or my case.

100.    On or about September 17, 2022, Defendant "updated" her review,

writing:

> threatened to make a false report to the police and have me falsely arrested
> for a crime after I confronted him about him lying to me, not doing his job
> and charging me thousands of dollars. He tried to force me to remove the
> review to protect his business. Daniel pays for/writes fake positive reviews
> to bury and contradict negative reviews. He's writing reviews thanking
> himself for imaginary work he never did and then responding to the
> reviews as himself. I have the call logs and text messages to prove that he
> never called me back. I have proof of him threatening me and more.
>
> Daniel charged me many thousands of dollars to write a motion to dismiss
> that he knew would fail. He did not gather or provide any evidence to
> support the motion despite having months to do so. He encouraged me not
> to countersue which was against my best interest and lied to me about
> which state had personal jurisdiction. He procrastinated for half a year
> while the statutes of limitations were running out then angrily blamed me
> for him not completing the work. He never returned calls. Daniel is very
> good at pretending that he's a good guy who wants to help you. Daniel
> advertises himself as someone who helps victims but that's all marketing.
> Daniel will take your money and take advantage of the fact that you don't
> know the law. You will not get the treatment and respect you deserve from

18

Daniel. He only cares about money, he does not care how his conduct adversely affects you or your case.

101.   Liu has additionally created three other Yelp reviews using fake names.

102.   Using the name "Carl M." Liu wrote on September 19, 2022:

This firm lawyers at this firm are very deceptive and incompetent. Daniel filed paperwork for the wrong case on the docket, he didn't even realize his mistake. I spoke with many lawyers after him, they all told me that a lot of what he told me wasn't true. His firm has hundreds of cases, he takes on any case if it will make him money. After working with Daniel, I strongly suspect that many of the positive reviews are written by Daniel himself, he is definitely not responsive. There are definitely much better lawyers.

103.   Using the name "John B." Liu wrote on September 16, 2022:

Daniel Szalkiewicz is the worst lawyer and the most unprofessional person I've worked with. He is unresponsive to clients and to opposition counsel, you never know what's going on with the case. He advised me not to countersue which was terrible advice, after I found another lawyer and countersued, the other party offered money to settle. His business model is taking on as many cases as possible. Even if the cases don't go anywhere or is dismissed, he'll still make thousands off of his clients.

104.   Using the name "Peter I." Liu wrote on December 30, 2021:

Would not recommend. Terrible attitude and very poor communication skills. He is too lazy to answer emails or pick up the phone. It really seems like he hates being a lawyer. Nothing gets done unless you constantly follow up with him.

105.   All three accounts have zero friends and have only written one review.

Recognizing the hallmarks of online harassment, Yelp suppressed three of the reviews, however they are still visible to the public with the click of a button.

### iii.    Defendant Liu's Avvo Reviews

106.   Liu also wrote reviews on Avvo.com.  Her October 21, 2022 review indicated:

Daniel doesn't know the law and is lazy.

Daniel advised me not to countersue, after I hired another lawyer, the opposition offered money to settle. Daniel's legal advice was incorrect, he was wrong about a lot of things. Hiring Daniel was a mistake that cost me tens of thousands of dollars. He was very unresponsive and lazy.

107.   Liu's December 12, 2021 review on Avvo.com alleged:

Regret Hiring Daniel Szalkiewicz
Would give Daniel Szalkiewicz negative stars if I could, Daniel was rude and condescending for no reason. He will drop your case if you call him out on his lack of diligence and communication. Daniel is prideful and his ego demands that you to be grateful that he took your case even if he doesn't get things done or return your calls. Choosing to hire Daniel is a very regrettable decision.

108.   Defendant Liu also made disparaging comments about Plaintiffs on Avvo.com on

December 8, 2021; December 10, 2021; December 11, 2021; and January 15, 2023.

#### iv.   Defendant Liu's BBB Review

109.   On or about January 1, 2022 Defendant also wrote a negative BBB review

concerning Plaintiffs, which stated:

Daniel advertises himself as someone who helps and fights for victims but that's all marketing, that's not who Daniel is. Daniel procrastinated for half a year while the statutes of limitations were running out then angrily blamed me for not completing the work. He repeatedly lied about working on the case. It took him half a year to begin working on the case. Daniel never returned any of my calls during the year he was my lawyer. Daniel feels that the rules of professional conduct that attorneys have to follow shouldn't apply to him. You will not get the treatment and respect you deserve from Daniel. You will be working harder on the case than he is. Daniel does not care about clients.

110.   On January 29, 2022, Defendant admitted to writing the review in a text

message to Plaintiff Szalkiewicz, stating:

You had a complaint on better business bureau from 07/19/20 and removed your profile off the website after I posted a review. That's pathetic, you really don't want honest reviews.

20

### VII.    Liu Creates a Cyber Attack on Plaintiffs to Prevent them from Operating

111.    During the same time Liu was creating numerous false and anonymous reviews online, upon information and belief, Liu also orchestrated a cyber-spam attack on Plaintiffs.

112.    Liu, illegally and unlawfully, using VPNs and proxies, signed Plaintiffs' email address and Plaintiff Szalkiewicz's personal cell phone number up to receive spam calls and emails.

113.    Plaintiffs received anywhere between 200 to 500 emails a day from numerous websites, including ctvnews.ca, almost every governmental agency, and Christian Scientist.

114.    In total, Plaintiffs received over 10,000 emails. The harassment and spam calls and messages became so bad that a member of Plaintiffs' firm changed their telephone number and filed a police report.

115.    The constant barrage of emails and texts prevented Plaintiffs from being able to fully run the firm.

116.    To this date, Plaintiffs still receive emails and texts because of Liu's actions.

### VIII.    Liu's Online Harassment: Demand for Money and the Creation of Websites

117.    After posting the January 1, 2022 Better Business Review, Liu began demanding money from the Plaintiffs, writing on January 29, 2022: "Daniel I want my money back. The thousands of dollars you charged me for a motion to dismiss you knew was going to fail while procrastinating for 5 months."

118.    On February 3, 2022 at 4:59 P.M., after Plaintiff Szalkiewicz once again asked Liu to stop communicating with him, she wrote: "I'm communicating with you because your services are a scam and you won't return the money I paid you."

119.    On February 4, 2022 at 9:25 P.M., Liu wrote:

        Hey asshole! When are you going to call the police and have them put me
        in jail? What?No balls because you know criticizing you isn't a crime and
        this isn't harassment. You said my texts were absurd, how about calling
        the police because you don't like being criticized? Return my money
        asshole.

120.    On February 11, 2022, at 7:34 P.M., Liu, unsolicited, wrote:

        Return my money you fucking garbage person
        Return the amount you scammed from me and I'll stop texting you.

        You always pretend you want to help, not once did you offer to refund the
        thousands of dollars I paid you despite the extremely egregious and
        atrocious job you did and the adverse position your actions left me in. You
        always acted like you don't care about money so your clients would trust
        you.

121.    On February 20, 2022, Defendant sent a message and wrote:

        If you do not return the money, unfortunately, I'll have to come after you,
        within legal means. I will help you and your train wreck dumpster fire
        firm like how you helped me. This is the final warning.

122.    On March 2, 2022 at 7:15 A.M. Defendant texted Plaintiffs:

        Why won't you return the money you scum? You have no shame. How
        can you take thousands of dollars from someone and do such a bad job,
        put them in such a bad position, negatively affect their case and life and
        not even acknowledge it? It's insane how shameless you are.

        Since you won't return the money, that's fine. I look forward to costing
        you as much as you've cost me.

123.    On September 17, 2022, five months after she last texted Plaintiffs, Liu texted

Plaintiffs numerous harassing messages for a span of two days. On September 19, 2022, Liu

wrote to Plaintiffs:

        You're a entitled pjece of garbage, you won't refund me but are demanding
        that I stop texting you. Why do I have to do what you want?

        Please die.

Go fucking die you piece of shit.

124. On September 21, 2022, Liu wrote to Plaintiffs "You should die you

money hungry scam artist. Return my money you greedy piece of garbage." When

Plaintiffs asked Liu to stop texting, she responded:

Or what? How about you return my money first?

**Return my money you scum. With the review, anyone who looks you up knows the kind of lawyer you are, your business will continue to suffer**. (emphasis added).

125. On September 22, 2022, Plaintiffs sent Liu the following message:

I just want to make sure I understand what you are saying. If I return the money you paid, you will remove your reviews, agree to not write anymore, and stop contacting me?

126. In response, that same day, Defendant wrote:

If you're offering to refund the money in exchange for not contacting you and remove any review that I posted, I would agree to it.

127. The following day, Defendant wrote "Do we have an agreement? You will be left

alone for good if the money is returned."

128. After years of harassment, Plaintiff inquired to Defendant "I will put something

together next week. Why didn't you just say that originally rather than all the messages?"

129. In response, on September 23, 2022, Defendant stated:

Okay. I don't think you would have agreed to it a year ago, **not without any effect on your business.** Include in the agreement that it will be wired since checks can bounce and the agreement is void if the money is not received. I'll have to look it over before signing.
(emphasis added)

130. The following week, on September 29, 2022, Liu wrote:

> Are you going to return the money? I like to get things done, if you've
> changed your mind, say so. You changed your mind last minute about
> representing me in the conference in exchange for signing a letter
> absolving you of any fault, causing me to freak out and it ended up costing
> me over a thousand dollars. I'm going to include that in the accounting

131.     When Plaintiffs explained they had been off for the Jewish holidays, Liu

threatened:

> You're stalling and wasting my time. I've been waiting a year for you to
> return the funds. Can you imagine how I feel having paid someone
> thousands of dollars to fuck me over? Don't fuck with me Daniel.
>
> Must be deja vu, just like last year you going on vacation instead of doing
> what you said you would.
>
> Clearly, my review has not been negative enough. I'll make sure to correct
> that error.
>
> Seriously what the fuck did I ever do to deserve coming across you?
> RETURN MY FUCKING MONEY YOU PIECE OF SHIT.

132.     The following text messages then took place



Case 2:20-cv-20268-MCA-AME    Document 55-2    Filed 07/02/25    Page 29 of 47 PageID: 496

133.    Plaintiffs sent Liu a proposed Agreement. In response, Liu simply wrote "I read it and just no. I will not agree to it. Well good luck with your business."

134.    Liu then continued:

> You have no leverage, I have all the leverage and this agreement is insanely one-sided in your favor and factually incorrect, it's not even worth trying. You must think everyone else is stupid except you. Wasted my time again. This is to document why there is no agreement.

135.    On December 28, 2022, just as she had done to P.S. and just as she would go on to do to her third attorney, Defendant Liu created a website in Szalkiewicz' name: www.danielszalkiewicz.com (**Exhibit 11**) with the sole intention of receiving money from Plaintiffs.

136.    Upon information and belief, Liu initially purchased and parked the domain name. She then underwent efforts to engage in search engine optimization, a process that she offered to do for Plaintiffs when she was their client.

137.    She posted a screenshot of a notice of appeal Plaintiffs did for their nonconsensual pornography client and used the term "Revenge Porn" five times to ensure it would appear in the Google search results.

138.    Defendant also copied language from Plaintiff's website, such as "Daniel Szalkiewicz New York Defamation Lawyer" so it would rank close to Plaintiff's actual website.

139.    Defendant Liu has changed the website several times in attempt to avoid legal liability for her impersonation and harassive tactics. For example, after a copyright form was submitted, Defendant Liu began placing disclaimers on her website.

25

140.    Additionally, Liu placed online carefully redacted versions of legal documents sent to her by Plaintiffs, including the parties' retainer agreement and the settlement agreement Plaintiffs sent to Liu relating to her harassment.

141.    As to the settlement agreement, Liu blacked out the portions of the document which delineate the dozens of text messages Liu had sent to Szalkiewicz following termination of their attorney-client relationship, Liu's creation of the impersonation website in Plaintiff Szalkiewicz' name, and her penning of dozens of disparaging online reviews across multiple platforms.

142.    Upon information and belief, Defendant's reason for registering and creating www.DanielSzalkiewicz.com was to divert potential clients from DS&A's true website and cause them to read negative statements about Plaintiffs in order to cause harm to Plaintiffs' business and, ultimately, for Defendant to profit from such name by selling the domain name to Plaintiffs.

## IX.    Liu's Text Message Harassment

143.    On February 3, 2022, Plaintiff Szalkiewicz wrote to Liu:

> Vivian, do not mistake my silence as an indication that your absurd assertions in any way portray the whole truth.  We no longer represent you.  Unless you need assistance with your file, please stop contacting me simply to berate me and rewrite history.  It is inappropriate, unprofessional, and it needs to stop…This has become harassment and I would rather not have to go to the police.

144.    Defendant Liu's text messages to Szalkiewicz included the following sentiments:

- *You're an entitled piece of garbage, you won't refund me but are demanding that I stop texting you.  Why do I have to do what you want? (September 19, 2022)*
- *Please die.* 🙏
- *Go fucking die you piece of shit.*

26

- *This is not harassment. I am not texting you or calling you constantly or dozens of times a day. And if you file a false police report, I will include that in the ethics complaint. You can block my number and not receive any texts from me (February 3, 2022)*
- *Daniel you just threatened to falsely report me for a crime, you can be charged with filing a false police report if do. I really don't have to do what you ask (February 3, 2022)*
- *If you have the balls to blow up your own life and your family's then do it, because you will be the one ending up being prosecuted which you would deserve for diverting police and prosecutorial resources from real crimes to someone sending you critical text messages. They'll know that you're a lawyer trying to protect himself from a malpractice lawsuit by getting his former client charged with a crime. Remembering you talking about having a conscience is very funny (February 3, 2022)*
- *I'm communicating with you because your services are a scam and you won't return the money I paid to you (February 3, 2022)*
- *Return the amount you scammed from me and I'll stop texting you (February 11, 2022)*
- *You always pretend you want to help, not once did you offer to refund the thousands of dollars I paid you despite the extremely egregious and atrocious job you did and the adverse position your actions left me in. You always acted like you don't care about money so your clients would trust you (February 11, 2022)*
- *You actually worse than P.S. because you actually believe you're a good person. P.S. knows he's a piece of shit. You made a fool out of me for a year for believing you actually wanted to help me. Go fuck yourself you piece of garbage. (February 11, 2022)*
- *You acted like I should be grateful you wrote the summons with notice in July and without you I wouldn't have been able to sue P.S., any other lawyer would've completed the summons and complaint in April you delusional fraud. You will get yours after gaslighting me for a year, fucking me over multiple times, costing me tens of thousands and threatening to falsely report me to the police for harassment for criticizing you in text messages. You claim to fight abusers when you're actually an abuser yourself. You are disgusting, you convinced me I was being unreasonable and you let me keep apologizing to you when you were violating the rules of professional conduct and being incredibly unprofessional (February 20, 2022)*
- *The ethics complaint will include the fact that you attempt to prevent…(February 20, 2022)*
- *The ethics complaint will include the fact that you attempt to prevent former clients from writing negative reviews about you by having them sign a retainer that gives you all intellectual property rights to anything they post online about you. It's deceptively phrased in a retainer as mutually beneficial but in reality is only protects you and your business. You would be violating attorney client privilege by posting stuff about your clients or their case online (February 20, 2022)*
- *Why won't you return the money you scum? You have no shame? How can you take thousands of dollars from someone and do such a bad job, put them in such a bad position, negatively affect their case and life and not even acknowledge it? It's insane how shameless you are. (March 2, 2022)*

27

- *Since you won't return the money, that's fine. I look forward to costing you as much as you've cost me. (March 2, 2022)*
- *Why haven't you called the police yet? Still waiting for you to have me arrested you fucking trash. (March 3, 2022)*
- *Daniel, you charged me over 6000 dollars for the following 'work': you didn't collect evidence before it was sealed by a judge even though you had months to do it or provide evidence to support the motion failed which you knew would. You didn't return calls or answer emails. You took 5 months to start writing the complaint and kept lying about working on it. You're such a greedy fraud. How are you not embarrassed about charging people for this? Because you don't think they'll find out or it'll be too late when they do and you get to keep the thousands of dollars you charged them without doing much of anything. If anyone should be arrested or charged it should be you for fraud. (March 30, 2022)*
- *You said I keep bringing up history, of course it's history to you, you received thousands of dollars for the bare minimum work possible. Your actions and shit quality of work are still affecting my life and case today. You don't care about any of your clients, you're the same as lawyers who see clients as cash cows while pretending to want to help them. You never apologize or take responsibility for your inferior service and work you… (April 23, 2022)*
- *You are making up crimes to justify your greed and absolve yourself of blame. You want to speak about legality, it's completely unethical for you to trick clients to prevent clients from writing negative reviews about you in the retainer agreement. Everytime I think you can't get lower, you do.*
- *You should die you money hungry scam artist. Return my money you greedy piece of garbage.*
- *Just clarifying what is really going on. You said I threatened your life, that is an extremely serious allegation (September 19, 2022)*
- *So much for resolving things like you said in your text message, this is what you were planning, a ploy to try to get me falsely arrested. You are such scum, I hope you die.*
- *I hope you get hit by a car and end up unable to walk and in pain every day you piece of garbage. I hope lawyers take advantage of you so they can make a living off of you and no one help you. It's because of you I will never get justice for what P.S. did to me. Go fucking die (September 17, 2022)*
- *The world would be a better place without garbage people like you, the legal profession would be better place without shitty money hungry lawyers like you. Go off yourself. Die you piece of shit (September 17, 2022)*
- *I'll make sure justice is served for what you did to me you fucking lying fraud (September 18, 2022)*
- *…I'm not someone who will just go away eventually and accept that you treated me like shit when I employed to do a job and paid you thousands of dollars, a job you did horribly according to your own peers. If you do not return the money, unfortunately, I'll have to come after you, within legal means. I will help you and your train wreck dumpster fire firm like how you helped me. This is the final warning… (February 20, 2022)*
- *Return my money you scum. With the review, anyone who looks you up knows the kind of lawyer you are your business will continue to suffer.*

28

- *I'll make sure this follows you for the rest of your pathetic career, you greedy disgusting pig.*
- *Justice being served means I will continue to keep my review of you online to expose the fraud that you are. In your false report of a crime to the police, I'm sure you will forget to mention that I'm incapable of physically harming you due to nerve damage (September 19, 2022)*
- *…You're despicable and disgusting, the way you pretend to want to help people. In reality, you fuck your own clients over and never apologize. Where is your conscience that you kept saying you have? You are such a piece of garbage. You deserve to go out of business and lose your license (January 15, 2022)*
- *If you do not return the money, unfortunately, I'll have to come after you, within legal means. I will help you and your train wreck dumpster fire firm like how you helped me. This is the final warning (February 20, 2022).*
- *You are worth less than $20 per hour. If you had charged me $450 per hour for this garbage, I would have already sued you by now (February 20, 2022).* (**Exhibit 14**)

145.    While Szalkiewicz initially thought that Liu's outbursts were the exasperated

words of a frustrated litigant, once Liu's increasingly violent statements began to mention his

family, he decided he would involve the police.

146.    On September 19, 2022, fearful that Liu might take matters into her own hands

and try to "off" him herself, Szalkiewicz reported Liu's many threats to his local police precinct

(**Exhibit 13**).

147.    Szalkiewicz informed Liu that he had made the report and hoped it would serve as

the wakeup call Liu needed to stop harassing him.

148.    It was not.

## X.    Plaintiffs Propose Settlement Agreement to Stop Harassment

149.    Over the course of her harassment, Liu had implied and, at least once, outright

stated that if Plaintiffs refunded her, she would stop harassing them.

150.     Despite knowing better, Szalkiewicz began entertaining returning the attorneys'

fees Liu had paid DS&A and indicated to Liu that he would send her a settlement agreement

outlining the proposed terms.

151.     When Szalkiewicz did not send the proposed agreement as quickly as Liu desired,

Liu accused him of "stalling and wasting my time" and said she had "been waiting a year for you

to return the funds." Liu warned him "Don't fuck with me Daniel" and threatened "Clearly, my

review has not been negative enough. I'll make sure to correct that error."

152.     Being reminded it was a Jewish holiday and Szalkiewicz was observing had no

impact on Liu who stated "Seriously what the fuck did I ever do to deserve coming across you/

RETURN MY FUCKING MONEY YOU PIECE OF SHIT[,]" "You did not say an extra day or

anything at all" and began to claim Szalkiewicz was "trying to find an excuse for turning back on

the agreement."

153.     Plaintiffs sent Liu an agreement wherein they agreed to return her money in

exchange for being left alone (Exhibit 15).

154.     Liu rejected the agreement, stating "I read it and just no. I will not agree to it.

Well good luck with your business."

155.     Liu's messages made clear that the money Liu had paid for approximately 11

months of legal work was not enough – Liu wanted more than just a refund.

156.     Liu claimed "You think you have an edge because I'm not a lawyer and you are

so can get me to sign this ridiculous agreement for a small amount. If this is truly criminal report

it to the police, let's go. I have not extorted you Daniel, the 6k is my own money."

157.     Even though Liu had proposed that Plaintiffs refund her retainer for relief from

her harassment, Liu began claiming "I know exactly why you want a settlement agreement. You

wouldn't ask for a settlement agreement if you didn't think there was any merit to my claims about your conduct.  If you read the text messages, you are the one who made the offer, it came from you.  Prior to you making the offer, I was demanding that you return my money because you did a absolutely horrible job."

158.    Indicating her intention to continue harassing Plaintiffs, Defendant Liu later wrote "You have no leverage, I have all the leverage and this agreement is insanely one-sided in your favor…"

## XI.    Liu's Online Harassment of other Attorneys

159.    Remarkably, in addition to P.S. and Plaintiffs, Defendant Liu has, at the very least, a third victim: Mancilla & Fantone, LLP.

160.    Mancilla & Fantone, LLP was the third of four firms which represented Defendant Liu in P.S.'s defamation case against her.

161.    Liu registered www.robertfantone.com on December 30, 2022.

162.    Liu's website maligning Mancilla & Fantone, LLP and its attorneys contains nearly identical allegations as those Liu made against Plaintiffs.  Among them:

- *Writes Fake Positive Reviews on Google and Avvo*
- *Takes Advantage of Client Not Knowing the Law*
- *[A]cts like he wants to help clients but he only cares about making money.  Robert takes advantage of the fact that client's don't know the law and uses it to manipulate them, knowing his clients are dependent on him to explain and interpret legal papers.*
- *Robert Fantone consistently lied to a client's face while charging them thousands of dollars for his legal counsel and services.*
- *Robert Fantone deceived and mislead me so he could make more money from me which cost me tens of thousands of dollars and put me in a terrible position in the case.*
- *Robert lied about the research he had done on my case and encouraged me to pursue a case in a state that he knew would get dismissed.  I spoke with other lawyer who confirmed that many of the things Robert told me were lies.*

31

163.    Liu has further claimed David Lin, the attorney she hired immediately after Plaintiffs representation, harmed her as well, stating "…Because of you I was in a rush to hire someone quickly last minute and he ended up taking advantage of me…"

## XII.    Liu's Harassment has Caused Plaintiffs Harm

164.    Liu's relentless harassment and online smear campaign has caused Plaintiffs harm.

165.    Liu's impersonation website is the second result on a Google search of Szalkiewicz' name (**Exhibit 12**).

166.    Multiple colleagues and potential clients have raised this fact to Szalkiewicz, who must explain the situation without breaking privilege.

167.    Because a large portion of DS&A's practice is devoted to nonconsensual pornography, DS&A's online presence is especially critical to its success as a firm.

168.    At least one potential client who discovered the website asked Szalkiewicz why he has not been able to effectuate removal of the website, insinuating if Szalkiewicz was unable to have this content removed, they had little faith that Szalkiewicz would be able to effectuate removal of their intimate content.

169.    As of the time of this filing, that potential client has not hired DS&A to represent them.

### XIII. Liu Shameless Demands Money in Exchange for the Return of the Domain Name as a "Settlement"

170.    While Liu's sole intention for registering the domain name was to obtain money from Plaintiffs, once the action was commenced, she stated for the first time her desire to extort Plaintiffs in no uncertain terms.

171.    Plaintiffs, along with the other attorneys whom Liu was harassing, offered to resolve the case, including paying her fees.

172.    In response, Liu demanded:

> $50,000 in fees and damages payable to Ms. Liu
>
> Ms. Liu wants an accounting and refund 100% of fees allegedly earned representing Ms. Liu (estimated $6.5K Szalkiewicz, $7.5K Fantone) + $15K to date motion prep based on notices served + $10,000 from each to avoid immediate motion practice to dismiss and for fees

173.    Plaintiffs then offered to allow Liu to keep any reviews online that she wanted, but to transfer the domain names back to Plaintiffs.

174.    In response, this time, Plaintiffs were informed "Vivian isn't negotiating and her number is $60,000."

### XIV. Plaintiffs Receive E-Mail Containing Information that Liu is Attempting to have Him Killed

175.    On June 13, 2024 at 11:28 a.m., Plaintiff Szalkiewicz received an e-mail from DarknetDroid@Proton.me entitled "About Vivian Liu – Please Read[.]"

176.    The e-mail indicated that the sender had been hired by Liu to build more websites about Plaintiffs and was currently in charge of three domains which belonged to Liu.  The sender claimed that, recently, Liu had stopped responding to him and owed him money.

177.    The sender informed Szalkiewicz that, unrelatedly, a friend of his/hers runs a website on the dark web designed to shakedown individuals attempting to hire assassins.  The

sender assured Szalkiewicz that he was not currently in any real danger as his/her friend's business plan was to keep Liu's money and not perform the requested services.

178.    Ultimately, the sender indicated that, in exchange for payment being made to a provided Bitcoin wallet, he/she would send Plaintiffs proof of the murder-for-hire plot and remove from the internet negative postings made by Liu.

179.    Szalkiewicz was horrified.  Sure, the sender claimed he was not at any risk, but what happened once/if Liu realized she had been scammed?  Perhaps next time she would find someone who was actually capable of murder.

180.    Liu's continued harassment and constant promising of Szalkiewicz's death made it all the more likely Liu was not only capable of the conduct described in the email, but it was very likely she took the additional step because her conduct was exposed as part of the lawsuit.

181.    Szalkiewicz attempted to bait the sender into providing additional information but was unsuccessful.

182.    Szalkiewicz reported the e-mail to the Federal Bureau of Investigations and an investigation is ongoing.

---

**About Vivian Liu - Please Read**

1 message

---

**Darknet Droid** <darknetdroid@proton.me>                         Thu, Jun 13, 2024 at 11:28 AM
To: "daniel@lawdss.com" <daniel@lawdss.com>

Daniel,

You're already familiar with Vivian Liu. I won't waste your time rewriting history. I was hired by her to build out more websites aimed at defaming you. I also have full control over these three domains:

https://danielszalkiewicz.com
https://robertfantone.com
https://pankaj-sharma.com

Vivian Liu sent me all her logins when she hired me. There are other domains she registered, but nothing is on those yet and they aren't ranking on Google. I'm reaching out because Vivian stopped communicating with me. She owes me money and I've taken her internet properties hostage. I can delete all of these websites and make them disappear from Google. I can also stop her from doing anything with the new domains she registered.

I can even delete reviews she has left you on Yelp, Avvo, Google, etc. I have control over all her accounts and can get them taken down. You should also know that she tried hiring an assassin on the dark web to have you killed. I have an associate that runs a website on there to catch people who try and purchase hits. He just steals their money and then reports them to law enforcement. She hasn't paid him yet, but they've been emailing back and forth about having you killed. The site is a scam / honeypot and you aren't at any risk. She told him she'll pay in the next few days.

If you're willing to pay me a fee, I'll take down the three websites listed above and delete the bad reviews she left you. She gave me the logins for everything, so I can definitely do it. I'll also send you all the proof showing she's trying to have you killed. I think what she did is already a pretty serious felony, but if she actually sends the money like she says she will, I think you can get her locked up for a really long time.

If you want my assistance, the fee is $1,000. My Bitcoin address is below. I'll do everything I said I will once payment is received. I have no loyalty to Vivian anymore.

bc1qa0zgne46ggxrkh49fq5vsy22xy67004jgpvp6n

Darknet Droid

---

183.    The e-mail has forced Plaintiff Szalkiewicz to alert the doormen at his office of

the potential risk and request that they no longer allow individuals to freely visit Plaintiffs'

office.

184.    Because of Liu's attempt to harm Plaintiffs, Plaintiff Szalkiewicz has also feared

for his safety, going to the office, and what other actions Liu will undertake next.

## FIRST CAUSE OF ACTION
### (Tortious Interference with Contract/Prospective Economic Advantage)

185.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

186.    Plaintiffs are an attorney and law firm in New York City.  DS&A's practice is largely focused on internet torts, including online defamation and nonconsensual pornography.  Given Plaintiffs' area of practice, many clients find Plaintiffs through online searches rather than on billboards or by word of mouth.

187.    Liu was also made aware of Plaintiffs' business model through her hours of conversations with them about same.

188.    During her campaign of harassment against Plaintiffs, Liu engaged in numerous wrongful means, including criminal conduct, threats of physical violence, fraud, misrepresentation, and economic pressure that exceeded simple persuasion.

189.    For example, Liu intentionally violated federal cyber stalking and harassment laws by creating an ongoing spam attack on Plaintiffs.  Liu also violated numerous terms of service on each of the websites on which she posted her false reviews by creating impersonation accounts.  Liu's harassment of Szalkiewicz and threat to harm his business also violated the New York State Penal Law.  Ultimately Liu's conduct led her to attempting to physically harm Szalkiewicz.

190.    Liu undertook this conduct with the knowledge of what her actions would do.  She created a similar extortion plan to extract $10,000 from P.S. in her underlying action; here her price was much higher, first $50,000 and now $60,000.  Defendant's sole purpose of stealing

36

Plaintiffs' name and creating an online site was to interfere with their business through wrongful means.

191.    Unfortunately for Plaintiffs, Defendant Liu's conduct worked.

192.    Defendant's actions have caused at least one potential client not to retain DS&A based on the reasoning that if DS&A is unable to remove the impersonation website, how will DS&A be able to remove their naked images from the internet.

193.    More so, Plaintiffs were made aware by a client that they were unable to refer business to Plaintiffs because of the numerous statements Liu placed online.

194.    As a result of Defendant's actions, Plaintiffs have been harmed.

### SECOND CAUSE OF ACTION
### (Cyberprivacy: 15 U.S.C. §8131)

195.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth herein.

196.    Plaintiff Szalkiewicz' name is Daniel Szalkiewicz.

197.    Defendant purchased and registered the domain name www.DanielSzalkiewicz.com without Szalkiewicz' consent.

198.    Defendant's specific intent for registering the domain name was to draw traffic away from DS&A's true website and so harm Plaintiffs' business that Plaintiffs would pay money to Defendant for the domain name.

199.    Defendant Liu's intent on gaining a profit from the domain name is evident; the text messages from Liu consistently demand Plaintiffs give her money or else she will continue her conduct.

200.    As a result of Defendant's actions, Plaintiffs have been damaged.

## THIRD CAUSE OF ACTION
### (Cybersquatting: 15 U.S.C. §1125)

201.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth

herein.

202.    Defendants have purchased, registered, and created the website

www.DanielSzalkiewicz.com.

203.    On that website, Defendant posts false or misleading descriptions and

representations of fact which are likely to cause confusion or mistake as to the connection of the

website with DS&A and Daniel Szalkiewicz and/or misrepresents the nature, characteristics, or

qualities of Plaintiffs' services.

204.    In fact, Defendant's www.DanielSzalkiewicz.com is the second website listed

when conducting a Google search for "Daniel Szalkiewicz[.]"

205.    Upon information and belief, potential clients have clicked the link to Defendant's

website believing they would be viewing Plaintiffs' website.

206.    Defendant's registration of www.DanielSzalkiewicz.com was undertaken in bad

faith.

207.    In an effort to keep the domain name, Defendant Liu added disclaimer language

only after she learned that Plaintiffs had applied for a copyright of their name.

208.    As a result of Defendant's actions, Plaintiffs have been harmed.

## FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

209.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth

herein.

Case 2:20-cv-20268-MCA-AME    Document 55-2    Filed 07/02/25    Page 43 of 47 PageID:
510

210.    Defendant has engaged in the intentional, extreme, and outrageous conduct of

possessing and threatening to have Plaintiff Szalkiewicz killed, harassing him at all hours of the

night, and routinely telling him to kill himself.

211.    Defendant engaged in this behavior with the intention of causing Szalkiewicz

harm or with disregard for the substantial probability that her behavior would cause him

emotional distress.  This behavior was undertaken to induce Plaintiff Szalkiewicz to do as

Defendant wished and to cause him physical harm.

212.    Szalkiewicz, who had used his home address as his office address during the

pandemic, was made so uncomfortable by Defendant's constant harassment and reference to his

family that he vacated the apartment he owned and still owns.

213.    Defendant intended to cause severe emotional distress or recklessly disregarded

the likelihood that such conduct would tend to cause severe emotional distress.  Such outrageous

behavior is beyond the limits of decency and is intolerable in a civilized society.

214.    As a direct and proximate result of Defendant's conduct, Plaintiff Szalkiewicz

suffered severe emotional distress.

215.    Defendant engaged in a deliberate and malicious campaign of harassment or

intimidation against Plaintiff Szalkiewicz which caused and continues to cause him severe

mental pain and anguish.

216.    Defendant acted with the intent to cause severe emotional distress, or

alternatively, disregarded the substantial probability that her actions would cause severe

emotional distress.

217.    Here, the acts of Defendant were so egregious and were done so clearly with

malice and/or reckless indifference in the face of a perceived risk that her actions would harm

Plaintiff's reputation and mental well-being, that, in addition to all the damages inflicted upon

Plaintiff and in addition to all the measure of relief to which Plaintiff may properly be entitled

herein, Defendant should also be required to pay punitive damages to punish her for her reckless

conduct in the further amount greater than the jurisdictional limit of all lower courts to be

determined by the trier of fact, in order to deter her and others similarly situated from engaging

in such conduct in the future.

218.    Plaintiffs demand judgment against Defendant in an amount to be determined

upon the trial of this action; said amount being sufficient to compensate Plaintiff Szalkiewicz for

his severe injuries as well as an amount sufficient to punish Defendant for her willful, wanton,

reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff,

together with interest, attorneys' fees, costs, and disbursements in this action; and said amount

exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### FIFTH CAUSE OF ACTION
#### (Violation of Civil Rights Law 79-n)

219.    Plaintiffs repeat and reallege the allegations stated above as if fully set forth

herein.

220.    Defendant Liu intentionally selected Plaintiff Szalkiewicz to harm and harass in

substantial part because of his gender.

221.    Liu claimed she engaged in a three-year course of harassment and abuse towards

Szalkiewicz because she was targeting "terrible men."

222.    Liu's selection of her harassment towards Szalkiewicz (and, in fact, any other

male attorney who represented her for more than two weeks) is apparent based on the fact that

40

there were female attorneys who handled Liu's matter yet she chose solely to target the men based on their gender.

223.   Liu's conduct towards Szalkiewicz is classified as harassment under section 240.25 of the penal law, as she was engaging in a course of conduct or repeatedly committing acts which places such person in reasonable fear of physical injury.

224.   Liu also engaged in other numerous violations of the penal law and federal stalking law because of Szalkiewicz' gender.

225.   As a result of Liu's conduct, Plaintiffs have been injured.

226.   Plaintiffs are entitled to an injunction to stop Liu's bias related intimidation towards them.

227.   Plaintiffs demand judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiffs for their severe injuries as well as an amount sufficient to punish Defendant for her willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against Defendant, containing the following relief:

A.   An award of damages against Defendant in an amount to be determined at trial to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for the costs of this action and reasonable attorney fees;

41

B.     An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

C.     Prejudgment interest on all amounts due;

D.     An award of costs that Plaintiffs have incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiffs' reasonable attorneys' fees and costs to the fullest extent permitted by law; and

E.     Such other and further relief as the Court may deem just and proper.


Dated: New York, New York
       August 12, 2024

Respectfully submitted,


**Daniel Szalkiewicz & Associates, P.C.**


By:    Daniel S. Szalkiewicz, Esq.
23 West 73rd Street, Suite 102
New York, NY 10023
Telephone: (212) 706-1007
Facsimile: (646) 849-0033
daniel@lawdss.com

42

## **VERIFICATION**

DANIEL S. SZALKIEWICZ, ESQ., being duly sworn, deposes and says that he is the Plaintiff herein and has read the foregoing Complaint and knows its contents; that same is true to his knowledge, except as to those matters herein alleged upon information and belief and, as to those matters, he believes them to be true

I affirm this 12th day of August, 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

_____
DANIEL S. SZALKIEWICZ