# EXHIBIT "B"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------------- x

MANCILLA & FANTONE, LLP, and
ROBERT FANTONE,                                    Index No.: 450521/2024

                              Plaintiffs,

          -against-
                                                   **AMENDED**
                                                   **VERIFIED COMPLAINT**

VIVIAN LIU,

                              Defendant.

----------------------------------------------------------------------- x

      Plaintiffs, Mancilla & Fantone, LLP and Robert Fantone, complaining of Defendant

Vivian Liu, allege as follows:

### PRELIMINARY STATEMENT

     1.     In November 2021 Plaintiffs were hired and did act and appear as attorneys for

defendant Vivian Liu (the "Defendant") with regard to a defamation lawsuit filed against her in

the United States District Court, District of New Jersey (the "New Jersey Action").

     2.     Ultimately, the Plaintiff Law Firm terminated its representation of the Defendant

via an order to show cause filed on or about February 24, 2022, which was granted on May 17,

2022. Subsequent to the representation, the Defendant commenced a campaign of defamatory

and harassing conduct designed to damage the Plaintiffs' business and reputation.

     3.     This action alleges Defamation, seeking damages from the Defendant stemming

from Defendant's efforts to disrupt Plaintiffs' business by publishing false statements about

Plaintiffs and spreading such false statements across multiple platforms on the internet.

Plaintiffs also seek permanent injunctive relief in the form of removal of the false statements

from the internet.

4.      As explained further below, the Defendant purchased two domain names matching the Plaintiffs' names – robertfantone.com and mancillafantone.com – and used such websites as a vehicle to disparage the Plaintiffs and their business.

5.      Defendant's public allegations against the Plaintiffs are wholly fabricated and false, as established by documentary evidence including invoices, bank statements, and the Defendant's own statements contained in emails and text messages.

6.      The Defendant did not merely leave a negative review of Plaintiffs on one of the several forums available to her like Google reviews or Avvo; instead, the Defendant utilized websites in the Plaintiffs' namesakes to disseminate her false statements to a wider audience than just those individuals seeking professional reviews.

7.      Further, the Defendant has similarly victimized an attorney that represented her prior to her engagement of the Plaintiffs.   That attorney, Daniel Szalkiewicz, has also filed a complaint against the Defendant alleging Tortious Interference with Contract/Prospective Economic Advantage as well as Cyberprivacy (15 U.S.C. § 8131) and Cybersquatting (15 U.S.C. § 1125) (*see Szalkiewicz & Associates et al v. Liu*, 15713/2024, currently pending in New York County).

## PARTIES

8.      Plaintiff Mancilla & Fantone, LLP is a limited liability partnership registered in the State of New York, with its principal place of business located at 260 Madison Avenue, New York, New York 10016.

9.      Plaintiff Robert Fantone is an attorney licensed in the State of New York, and at all times herein relevant to this action, a resident of the County of Queens, State of New York.

Case 2:20-cv-20268-MCA-AME    Document 55-3    Filed 07/02/25    Page 4 of 30 PageID: 518

10.     Defendant Vivian Liu is an individual, formerly a client of the Plaintiffs', that upon information and belief resides in Kings County, New York.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over these claims arising under New York State law and the Plaintiffs' damages exceed the jurisdictional limit of all lower courts. Venue is proper pursuant to CPLR § 503(a).

## JURY DEMAND

12.     Plaintiffs demand a trial by jury in this action.

## BACKGROUND

13.     As noted above, the Defendant hired the Plaintiffs to defend her in the New Jersey Action in November 2021; however, the Defendant had originally contacted the Plaintiffs regarding representation in the New Jersey Action in September 2021.  The Defendant was referred to the Plaintiffs by another attorney (the "Referring Attorney") who participated in conversations with the Defendant and the Plaintiffs during September and October 2021.

14.     The New Jersey Action accused the Defendant of purchasing a domain name in the name of the opposing party and using it to defame and extort him (*see* Exs. B & C to the Bryant Aff., NYSCEF 19 & 20).[1][2]

15.     When the Defendant originally approached the Plaintiff regarding representation, the Defendant had a motion to dismiss pending in the New Jersey Action, which had been filed by her prior attorney Daniel Szalkiewicz.  The possibility that such application could be successful caused the Plaintiffs to decline the Defendant's request for representation at that time.

---

[1] The irony here is not lost on the Plaintiffs.
[2] Citations to all lettered Exhibits herein refer to those attached to the Affirmation of Matthew Bryant (Defendant's counsel), NYSCEF 16.

Case 2:20-cv-20268-MCA-AME    Document 55-3    Filed 07/02/25    Page 5 of 30 PageID: 519

16.     The Defendant was also seeking representation for an action she filed in Kings County against the plaintiff in the New Jersey Action (the "Kings County Action").  The Defendant commenced the Kings County Action on July 28, 2021 via summons with notice filed by Mr. Szalkiewicz (Ex. I to Defendant's Motion to Dismiss, NYSCEF 26).  The summons with notice in the Kings County Action alleged sexual assault and related causes of action (*id*).

17.     Because the Defendant's allegations in the Kings County Action described events that took place mostly in Pennsylvania, the Referring Attorney took it upon himself to research legal issues related to long-arm jurisdiction over the defendant, ultimately concluding that the Kings County Action may not be viable.

18.     Based upon this, the Plaintiffs joined with the Referring Attorney in declining representation of the Defendant in the Kings County Action in October 2021.

19.     After the Defendant's motion to dismiss was denied in the New Jersey Action, the Defendant again contacted the Plaintiffs requesting representation in the New Jersey Action. The Defendant executed a retainer agreement dated November 2, 2021, which contained the applicable hourly rates and was contingent upon the Plaintiffs' receipt of an up-front retainer of $15,000.

20.     After retaining the Plaintiffs for the New Jersey Action, the Defendant also discussed retaining the Plaintiffs to represent her in the Kings County Action in mid-November to early December 2021, offering to pay the same hourly rate.

21.     The Plaintiffs reminded the Defendant that the Referring Attorney had already performed research and that such cause of action might not have been worthwhile to pursue.

22.     The Defendant argued that it was the Referring Attorney that had reached that conclusion.[3]  The Defendant specifically requested that the Plaintiffs perform their own research and form their own conclusion with respect to the viability of the Kings County Action, stating in a November 30, 2021 email: "Please find out if we can move forward with the complaint in NY" (*see* Ex Y to the Bryant Aff., NYSCEF 42 at 1).  The Defendant also stated that she did not care if the New York action got dismissed based on jurisdiction.

23.     As explained at length below, the Defendant ultimately chose not to retain the Plaintiffs in the Kings County Action and instead proceeded *pro se*, with the intention of hiring the Plaintiffs only after the opposing party retained counsel.

24.     The Defendant was happy with this arrangement and entirely satisfied with the Plaintiffs representation and assistance, stating in a January 7, 2022 text message: "Thank you. I'm glad you're my attorney."

25.     Following further negotiations with opposing counsel, on January 14, 2022, the Plaintiffs successfully persuaded the opposing party to reverse their position. Instead of demanding $20,000, the opposing agreed to settle the pending litigation by offering a $10,000 payment to the Defendant, representing a $30,000 shift in the settlement amount.

26.     On February 18, 2022, the Plaintiffs wrote the following email to the Defendant encouraging her to accept the opposing party's offer of $10,000.

> Vivian,
>
> I'm writing to memorialize the information we discussed today concerning the current offer of 10K.  I think the offer will likely increase over time, but not enough to justify the legal costs to you.  For example, when you first came into the office we advised you to end the case with a "walk away"

---

[3] The Defendant later confirmed this important detail in an email dated May 17, 2022, in which the Defendant stated: "we had a discussion in your office with [the Referring Attorney] during our initial meeting where [the Referring Attorney] concluded that my case was not viable in NY."

FILED: NEW YORK COUNTY CLERK 08/09/2024 08:34 PM
NYSCEF DOC. NO. 76

INDEX NO. 450521/2024
RECEIVED NYSCEF: 08/09/2024

Case 2:20-cv-20268-MCA-AME    Document 55-3    Filed 07/02/25    Page 7 of 30 PageID:
521

(where neither side pays money, and both agree not to sue), because we didn't think you would be able to obtain enough money through your NY case to justify spending on litigation in both NY and NJ. Since that time we have been able to get [the opposing party] to go from demanding 20K from you to offering 10K to you; however, in that time you have also spent almost 10K on legal fees. I understand that [the opposing party] has offered 10K that he otherwise wouldn't have had to pay if you did the walk away, but you have also had to pay a similar amount in legal fees. We see this trend continuing as the case proceeds.

More importantly, since you retained us you have repeatedly expressed to us that the litigation is extremely stressful and is negatively impacting your mental health. So for these reasons, Andrew and I strongly encourage you to accept the current offer of 10K to resolve both the NJ case and the NY case before spending more money on legal fees.

-Robert

27.     The Defendant responded to this email on February 18, 2022 by accepting the opposing party's offer of $10,000 to resolve both the New Jersey Action and the New York Action, stating: "I authorize you to settle both cases for 10k."

28.     However, the Defendant later changed her mind and directly contacted opposing counsel and the opposing party via emails dated February 20, 2022 to inform them that she no longer accepted the settlement amount of $10,000.

29.     Three days later, on February 23, 2022, the Plaintiffs wrote the Defendant an email informing her that they could no longer represent her (Ex. Z to the Bryant Aff., NYSCEF 43).

30.     Initially, the Defendant apologized and thanked the Plaintiffs for the work the Plaintiffs had done for her, stating via text message dated February 23, 2022:

I'm sorry that I've been so emotional and that I made you uncomfortable. I was not blaming you for anything in the emails […] I never denied that I repeatedly changed my mind. I understand that you feel the need to protect yourself. Since I was the one who changed my mind, I would never claim it was your fault anyway because it's not. I was frustrated with [the opposing party] and my circumstances but I always take responsibility for my own

Case 2:20-cv-20268-MCA-AME    Document 55-3    Filed 07/02/25    Page 8 of 30 PageID: 522

actions. I wanted to tell you that yesterday. I understand that maybe given what I said about Daniel you may think I would blame you for something and come after you. If you were concerned at all about that, I wouldn't, you're very different from Daniel. I know you tried your best to increase the offer. Thank you.

31.    The Defendant went on to confirm her appreciation for the Plaintiffs' representation of her, stating via text message dated February 23, 2022 that she had no "intention of harming" the Plaintiffs and that she "appreciate[s] all of [Plaintiffs'] help."

32.    Despite her apologies and appreciation, the Defendant subsequently purchased the websites "robertfantone.com" and "mancillafantone.com" and filled them with false factual statements about the Plaintiffs.

33.    The Defendant has similarly attacked another attorney who represented her prior to her engagement with the Plaintiffs herein (*see Szalkiewicz & Associates et al v. Liu*, 15713/2024, currently pending in New York County).

34.    Like the instant action, the Szalkiewicz action describes how the Defendant purchased domains in the name of Szalkiewicz and his law firm and used such platforms to disparage him with false allegations designed to impair his business.

35.    It further describes the harassing criminal conduct that the Defendant directed towards Szalkiewicz, which caused him to file a police report in September 2022.

**<u>FIRST CAUSE OF ACTION</u>**
**Defamation Per Se**

36.    Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth herein.

**The Defendant's Defamatory Publications**

37.    With respect to the Defendant's conduct towards the Plaintiffs herein, the domains the Defendant purchased to carry out her tortious conduct against Plaintiffs are:

    a.  https://mancillafantone.com

    b.  https://robertfantone.com

38.    The false statements that were published on the website

https://mancillafantone.com include, among others:[4]

    a.  "Robert repeatedly insisted on doubling the size of retainer from 10k to 20k and refused to file paper work unless the retainer was doubled"

    b.  "Robert held onto the client's retainer for 3 months after he was no longer working on the case"

    c.  "Robert Fantone is writing fake positive reviews on Google and Avvo about himself and his firm and that the positive reviews are not written by his clients but by Robert's friends and other lawyers pretending to his clients"

    d.  "Robert Fantone Refused to File Paperwork for a Case Unless Retainer Was Doubled and Return Retainer"

    e.  "Robert Fantone refused to file paperwork for a case unless the client doubled the retainer, he repeatedly insisted on doubling the size of retainer from 15k to 30k. Robert Fantone held onto the client's retainer for 3 months after the end of client-attorney relationship"

    f.  "Robert Fantone writes fake positive Google and Avvo reviews about himself and his firm, Mancilla & Fantone LLP, to contradict and bury negative reviews. Many of the positive reviews are not written by clients but by Robert Fantone, Andrew Mancilla, their friends and other lawyers."

---

[4] The Defendant continues to change the content of the website by adding and subtracting defamatory statements.

39.    The false statements that were published on the website https://robertfantone.com include, among others:[5]

a.    "Robert Fantone repeatedly insisted on doubling the size of retainer from 10k to 20k, he refused to file paper work unless I doubled the retainer"

b.    "Robert Fantone held onto my retainer for 3 months after the end of client-attorney relationship"

c.    "Robert Fantone is writing fake positive Google and Avvo reviews about himself and his firm, Mancilla & Fantone LLP, to contradict and bury negative reviews"

d.    "Many of the positive reviews are not written by clients but by his friends and other lawyers"

e.    "[Robert Fantone] upvoted all his fake positive reviews on Google and removed the negative reviews"

f.    "Robert Fantone Refused to Return Retainer for 3 Months"

g.    "Robert Fantone Writes Fake Positive Google and Avvo Reviews"

40.    As stated above, the Defendant made similar statements in a false review she published on Google, which is viewable to the public on the internet.

41.    One such false Google review states: "[Robert] repeatedly insisted on doubling the size of the retainer form 10k to 20k, he refused to file paper work for the case unless I doubled the retainer.  He held onto my retainer for 3 months after our client-attorney relationship ended."

---

[5] The Defendant continues to change the content of the website by adding and subtracting defamatory statements.

42.     These false publications tend to disparage and injure the Plaintiff Law Firm, including Plaintiff Fantone and his law partner Andrew Mancilla, the principal members of the Plaintiff Law Firm, in their profession.

43.     The Defendant did not have authorization to make the false statements.

44.     The false statements were not privileged.

45.     The statements are objectively false, as evidenced by bank statements and invoices, as well as emails and text messages between the Plaintiffs and the Defendant.

**The Defendant's Malice and Her Knowledge of the Falsity of Her Statements**

46.     The Defendant did not merely leave a negative review of Plaintiffs on one of the several forums available to her like Google reviews, Avvo, Yelp, and the Better Business Bureau, among others.  Rather than limiting her comments to professional review platforms, the Defendant utilized websites in the Plaintiffs' namesakes to broadcast her false statements to an audience much broader than individuals seeking professional reviews.  Her conduct thus surpasses that of a dutiful reviewer and is highly indicative of the Defendant's malicious intent.

47.     Additionally, as discussed below, the Defendant published the false statements with knowledge of their falsity, or at the very least, with a reckless disregard as to whether the statements were true or false.

**(i)     The Defendant's Allegation That the Plaintiffs Refused to Return Her Retainer for 3 Months Was Knowingly False**

48.     With respect to the Plaintiffs' alleged failure to provide the Defendant with her retainer "for 3 months after the end of the client-attorney relationship," and for "3 months after he was no longer working on the case," documentary evidence easily establishes the falsity of the Defendant's statements, and that the Defendant knew such statements were false.

Case 2:20-cv-20268-MCA-AME     Document 55-3     Filed 07/02/25     Page 12 of 30 PageID: 526

49.     Text messages indicate that the Defendant first began requesting the return of her retainer in late February to early March of 2022, shortly after the Plaintiffs advised her that they could no longer represent her.  Via text message dated March 10, 2022, Mr. Fantone advised the Defendant: "I'm happy to return the funds, I just need someone to execute that substitution of counsel form like I did."

50.     The Defendant was well aware that attorneys typically hold onto a client's retainer until they are formally relieved as counsel because the exact same thing happened with her prior counsel, David Lin, Esq., when the Plaintiffs were substituted onto the case.  In that situation, the Defendant asked Mr. Fantone to contact her prior counsel, Mr. Lin, directly to arrange substitution and to get the retainer released, stating in a November 10, 2021 text message: "David says he cannot return the retainer until he is officially out of the case and needs a substitution form.  I did not realize that he can't send the retainer until after he's already been substituted."

51.     Despite knowing this, because the Defendant was adamant regarding the return of her retainer, the Plaintiffs returned 85% of the Defendant's unused retainer on March 14, 2022, and the remaining 15% on May 10, 2022.  These precise dates and amounts are reflected in Plaintiffs' bank records and are consistent with text message correspondence between the parties.

52.     At the time her entire retainer had been returned to her on May 10, 2022, the Plaintiffs had not yet been relived as Ms. Liu's counsel.  In fact, the Court did not grant the Plaintiffs' application to be relieved until May 17, 2022 (*see* DNJ Order attached hereto as Exhibit 1).

53.     Therefore, the Defendant was well aware that the Plaintiffs returned her entire retainer **one week prior to being relived as counsel on her matter**.

54.     Documentary evidence further establishes that the Defendant could not have been mistaken about when the attorney-client relationship ended with the Plaintiffs or when the Plaintiffs stopped working on the case.

55.     Court records and text messages establish that the Plaintiffs appeared at a discovery conference on behalf of the Defendant on May 5, 2022, just five days before the return of the last 15% of the Defendant's retainer.

56.     Text messages also show that the Defendant consulted with Mr. Fantone regarding settlement procedures on May 9, 2022, just one day before the return of the last 15% of the Defendant's retainer.

57.     Text messages further establish that the Defendant acknowledged the existence of the attorney-client relationship as late as May 16, 2022, **6 days after the return of the retainer**, stating in a text message:

> The court has already said they are going to grant your motion to withdraw but want to reassure you if you end up working on the case, I'll wire money back to your account. I know you want to be off this case. It's unfortunate that the court hasn't granted the motion yet. If there is work, let me know, I'll send money.

58.     Based on these text messages, the Defendant was obviously aware that the entirety of her retainer was returned to her prior to the termination of the attorney-client relationship, in stark contradiction to her defamatory statement alleging that the Plaintiffs failed to return her retainer for "3 months after the end of the attorney client relationship", and for "3 months after he was no longer working on the case."

**(ii)     The Defendant's Allegation That the Plaintiffs' Reviews Are Fake Was Knowingly False**

59.     The Plaintiffs' Google reviews were all drafted by the Plaintiffs' clients (see the Google reviews attached hereto as Exhibit 2).[6]

60.     Upon examination, the Google reviews have absolutely no indicia of fraud or inauthenticity.  Almost every individual that left a review provided his or her (or their) full name, and some also provided photographs of themselves.  Further, the reviews provide various levels of specificity, each detailing the client's unique experience working with the Plaintiffs.

61.     The Defendant did not take any measures to establish that the reviews were not authentic or to otherwise verify her assertions.  Instead, the Defendant brazenly published statements alleging that the reviews were false.  In doing so, the Defendant, at the very least, ignored a significant risk that her statements regarding the authenticity of the Plaintiffs' Google reviews were false.

62.     However, additional facts suggest that the Defendant's intent was more sinister. The Defendant directed the identical bogus allegation at Daniel Szalkiewicz on the defamatory website she created, stating "Daniel Szalkiewicz Writes Fake Positive Reviews" (*see* Ex. BB to Bryant Aff., NYSCEF 45 at 2).  Thus the Defendant has a pattern of using the same defamatory allegations regarding "fake reviews" against her targets, without any basis.

**(iii)     The Defendant's Allegation That the Plaintiffs Refused to File Paperwork Unless She Doubled the Retainer Amount Was Knowingly False**

---

[6] The Google reviews can also be accessed online at:
https://www.google.com/search?q=mancilla+and+fantone&rlz=1C5CHFA_enCA1017CA1017&oq=mancilla+and+fan&gs_lcrp=EgZjaHJvbWUqCggAEAAY4wIYgAQyCggAEAAY4wIYgAQyEAgBEC4YrwEYxwEYgAQYjgUyBggCEEUYOTIKCAMQABiABBiiBDIKCAQQABiiBBiJBTIKCAUQABiABBiiBDIKCAYQABiABBiiBDIGCAcQRRg9qAIAsAIB&sourceid=chrome&ie=UTF-8

63.    Prior to retaining the Plaintiffs, one of the Defendant's prior attorneys had filed a summons with notice in Kings County Supreme Court on behalf of the Defendant alleging sexual assault and related claims (the "Kings County Action").

64.    Once the Plaintiffs were retained, one of the firsts actions they took was contacting opposing counsel in the New Jersey Action to see if they could achieve settlement on behalf of the Defendant for little to no money, thus saving her the significant costs of litigating.

65.    Saving the Defendant legal costs was a central component of the Plaintiffs' representation, mostly because the Plaintiffs did not believe the Defendant's damages would justify the high costs of litigation, even if she was successful in her Kings County Action (which, again, was filed prior to the Plaintiffs being retained).[7]

66.    The Plaintiffs repeatedly conveyed this belief to the Defendant throughout their representation.  For example, as evidenced in Exhibit Y to the Defendant's motion to dismiss (NYSCEF 42), the Plaintiffs suggested from the start that the Defendant resolve the matter with a "walk away," which would not require the Defendant to pay any money to her opposition and would significantly minimize her legal fees (*id*. at 2).

67.    The Plaintiffs proposed retainer agreement with the Defendant for representation in the Kings County action required the Defendant to provide an up-front retainer of $15,000.  However, the Defendant specifically stated that she would be willing to continue the Kings County Action (filed by her prior counsel) "*pro se*" (*id*. at 1).   As made clear by the Defendant's November 30, 2021 email, her strategy entailed entering "into one or more lawsuits that will consume [the parties' lives] for the next couple years" (*id*).

---

[7] This sentiment is evidenced in Exhibit Z to Defendant's motion to dismiss, which states: "Andrew and I stressed that it didn't make financial sense to continue your claim because your prospect of obtaining money over and above your legal fees was not good, and that you had repeatedly conveyed to us that it was emotionally taxing on you to continue to litigate."  (*see* NYSCEF 43 at 1).

68.     After being advised of the potential legal fees associated with protracted litigation (*id*.), the Defendant ultimately chose to forgo hiring the Plaintiffs to represent her in the Kings County Action, which, again, had been originally commenced by her prior attorney.  Instead, the Defendant asked the Plaintiffs to assist her in finishing a draft of the complaint in the Kings County Action that her prior attorney had started, which the Defendant could then file *pro se*.

69.     **The Defendant stated her intention to formally hire the Plaintiffs to represent her in the Kings County Action only if the opposing party hired counsel**.

70.     During this process, the Defendant made multiple trips to the Kings County courthouse in connection with the filing of her Kings County complaint.  While experiencing some difficulty in navigating court procedures, the Defendant briefly expressed regret in choosing to save money by representing herself *pro se*, stating via text message dated December 23, 2021: **"I should have just hired you."**

71.     At some point the Defendant asked the Plaintiffs to file the complaint in the Kings County Action via the NYSCEF system, to which the Plaintiffs stated they could not do so without simultaneously entering an appearance on the case.

72.     The Defendant understood this, and because she chose to represent herself *pro se*, the Defendant subsequently obtained her own NYSCEF credentials to facilitate her *pro se* filings in the Kings County Action, and ultimately filed her Kings County Action via her own NYSCEF account on December 31, 2021.

73.     The Defendant was ultimately able to navigate the court system successfully, filing her *pro se* Kings County complaint and arranging for service to be completed on the opposing party.  After the Defendant notified Mr. Fantone of her achievements via text, Mr. Fantone stated, in jest: "Ok great, I think you're a lawyer now! Lol."  The Defendant responded

Case 2.20-cv-20268-MCA-AME   Document 55-3   Filed 07/02/25   Page 17 of 30 PageID: 531

by reiterating her intention to hire the Plaintiffs only if the opposing party hired counsel, stating via text message: **"Lol, I'll retire soon and hire you to do the rest once he hires someone."**

74.     It is clear from these allegations that the Defendant performed her own cost-benefit analysis and chose to file the complaint in the Kings County Action *pro se* with the intention of hiring Plaintiffs only if the opposing party retained counsel.

75.     The Defendant thus made the following defamatory statements with knowledge of their falsity: "Robert Fantone repeatedly insisted on doubling the size of retainer from 10k to 20k, he refused to file paper work unless I doubled the retainer," and "Robert Fantone refused to file paperwork for a case unless the client doubled the retainer, he repeatedly insisted on doubling the size of retainer from 15k to 30k."

### SECOND CAUSE OF ACTION
**Permanent Injunction**

76.     Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth herein.

77.     Defendant's defamatory publications were targeted at the Plaintiff Law Firm and its members Plaintiff Fantone and Mr. Mancilla and were specifically designed to cause destruction of Plaintiffs' business.

78.     Defendant's defamatory publications and other conduct have caused harm to Plaintiffs' reputation and economic interests, the full extent of which is unknown and impossible to calculate and remedy with economic relief.

79.     Plaintiffs lost at least $10,000 in income as a direct result of the Defendant's false statements.

80.     Further, the Defendant's harm is widespread due to her intentional use of domain names containing the Plaintiffs' namesakes.

81. Such irreparable harm will continue for as long as Defendant's defamatory publications are visible.

82. Injunctive relief is necessary to preserve Plaintiffs' business moving forward.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request the following relief against Defendant as follows:

1. An order mandating Defendant to remove all content she created from the internet referring to the Plaintiff Law Firm and its members Plaintiff Fantone and Mr. Mancilla, either directly or indirectly, and enjoining Defendant from making any further publications regarding the Plaintiff Law Firm, and its members, Plaintiff Fantone and Mr. Mancilla;

2. An award of actual or compensatory damages against the Defendant in an amount to be proven at trial to compensate Plaintiffs for all monetary and/or economic harm stemming from Defendant's conduct;

3. An award of punitive damages in an amount to be determined at trial;

4. An award of pre-judgment and post-judgment interest on an award of damages to be determined at trial;

5. An award of reasonable attorneys' fees and costs; and

6. Such other and further relief as the Court may deem just and proper.

Dated: August 9, 2024
New York, New York

**Mancilla & Fantone, LLP**

By: *Robert A. Fantone*
Robert Fantone, Esq.
260 Madison Avenue, 22nd Floor
New York, N.Y. 10016
(646) 225-6686
robert@law-mf.com

## VERIFICATION

Robert Fantone, being duly sworn, deposes and says: I am a member of Mancilla &
Fantone, LLP, the Plaintiff in the above-entitled action, and I am authorized to execute this
verification on behalf of Plaintiff. I have read the allegations of the foregoing complaint and
know the contents thereof. I have personal knowledge of the contents of the complaint, which are
true to my knowledge, except as to matters therein stated to be alleged on information and belief,
and as to those matters I believe them to be true.

I affirm this 9th day of August, 2024 under the penalties of perjury under the laws of New
York, which may include fine or imprisonment, that the foregoing is true, and I understand that
this document may be filed in an action or proceeding in a court of law.


Robert Fantone

Case 2:20-cv-20268-MCA-AME    Document 55-3    Filed 07/02/25    Page 20 of 30 PageID: 534

# EXHIBIT 1

Case 2:20-cv-20268-MCA-AME Document 55-3 Filed 05/07/25 Page 21 of 30 PageID: 535

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PANKAJ SHARMA, | **Civil Action No. 20-20268-MCA-AME** |
| Plaintiff, | **ORDER** |
| v. | |
| VIVIAN LIU, | |
| Defendant. | |

**THIS MATTER** having come before the Court upon the motion by the law firm of Mancilla & Fantone, LLP, counsel for Defendant Vivian Liu, to withdraw as counsel pursuant to Local Civil Rule 102.1 [ECF Nos. 33 and 34]; and it

**APPEARING** that Robert Fantone, Esq. averred in a declaration dated February 24, 2022 [ECF No. 34-2] that "a breakdown in communication has arisen between [his] firm and Ms. Liu." Additionally, Ms. Liu affirmed that she "consents to the withdrawal of her attorneys, Mancilla & Fantone, LLP," in this matter. [ECF No. 34-3]; and it further

**APPEARING** that the motion to withdraw was filed on February 24, 2022, and is unopposed; and it further

**APPEARING** that the Court has considered the written submissions and decides the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78; and it further

**APPEARING** that Local Civil Rule 102.1 provides that "[u]nless other counsel is substituted, no attorney may withdraw an appearance except by leave of Court." In considering a motion to withdraw, this District applies Rule 1.16 of the New Jersey Rules of Professional Conduct ("RPC"), which sets forth an attorney's ethical obligations in terminating representation

of a client. *See* Local Civil Rule 103.1 (providing that federal practitioners in this District are

subject to the New Jersey RPCs); *see also Haines v. Liggett Grp., Inc.*, 814 F. Supp. 414, 422-23

(D.N.J. 1993) (holding that RPC 1.16 applies to a motion to withdraw as counsel in New Jersey

federal court). RPC 1.16(b) sets forth various grounds on which an attorney may be permitted to

withdraw from representing a client, as follows:

> (1) withdrawal can be accomplished without material adverse effect on the
> interests of the client;
>
> (2) the client persists in a course of action involving the lawyer's services
> that the lawyer reasonably believes is criminal or fraudulent;
>
> (3) the client has used the lawyer's services to perpetrate a crime or fraud;
>
> (4) the client insists upon taking action that the lawyer considers repugnant
> or with which the lawyer has a fundamental disagreement;
>
> (5) the client fails substantially to fulfill an obligation to the lawyer
> regarding the lawyer's services and has been given reasonable warning that
> the lawyer will withdraw unless the obligation is fulfilled;
>
> (6) the representation will result in an unreasonable financial burden on the
> lawyer or has been rendered unreasonably difficult by the client; or
>
> (7) other good cause shown for withdrawal exists.

RPC 1.16(b). Additionally, the Rule provides that "[u]pon termination of representation, a

lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as

giving reasonable notice to the client, allowing time for employment of other counsel,

surrendering papers and property to which the client is entitled and refunding any advance

payment of fee that has not been earned or incurred." RPC 1.16(d); and it further

    **APPEARING** that, guided by RPC 1.16, courts in this District consider several factors in

evaluating a motion to withdraw as counsel: "(1) the reasons why withdrawal is sought, (2) the

prejudice withdrawal may cause to litigants, (3) the harm withdrawal might cause to the

administration of justice and (4) the degree to which withdrawal will delay the resolution of the case." *See United States ex rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc.*, 994 F. Supp. 244, 252-53 (D.N.J. 1997); *Haines*, 814 F. Supp. at 423. Although good cause for withdrawal may exist, the decision to permit an attorney to withdraw his or her appearance remains entirely within the discretion of the Court. RPC 1.16(c); *see also Haines*, 814 F. Supp. at 422 (finding that RPC 1.16(c) "provides that withdrawal is entirely within the discretion of the court and a court may refuse to allow withdrawal despite a showing of good cause."); and it further

     **APPEARING** that courts in this District have recognized that if clients knowingly and willingly refuse to communicate and cooperate with their lawyer, the lawyer may withdraw after giving adequate written notice to the client. *See First Franklin Fin. Corp. v. Rainbow Mortg. Corp.*, C.A. No. 07-5440 (JBS/AMD), 2008 WL 11381896, at *2 (D.N.J. Oct. 24, 2008) (citing *Ramada Worldwide Inc. v. NPR Hospitality Inc.*, C.A. No. 06-4966, 2008 WL 163641, at *2 (D.N.J. Jan. 16, 2008)) (good cause to withdraw as counsel exists where a lawyer is unable to contact his clients and the clients fail to fulfill the obligation to cooperate and assist in their defense); and it further

     **APPEARING** that while permitting Ms. Liu's counsel to withdraw may delay the adjudication and/or resolution of this case, there is no indication that Ms. Liu will resume communicating with counsel. This breakdown has rendered Mancilla & Fantone, LLP's representation of Ms. Liu unreasonably difficult. Given the communication breakdown, the Court finds good cause to grant Mancilla & Fantone, LLP's motion to withdraw as counsel, pursuant to Local Civil Rule 102.1; accordingly, for the reasons discussed above,

     **IT IS** on this 17th day of May 2022,

**ORDERED** that the motion by Mancilla & Fantone, LLP, counsel of record for

Defendant Vivian Liu, to withdraw as counsel pursuant to Local Civil Rule 102.1 [ECF Nos. 33

and 34], is **GRANTED**; and it is further

**ORDERED** that Mancilla & Fantone, LLP shall comply with their obligations under

RPC 1.16(d), as adopted by Local Civil Rule 103.1; and it is further

**ORDERED** that Mancilla & Fantone, LLP shall serve a copy of this Order on Defendant

Vivian Liu by overnight and regular mail within three business days; and it is further

**ORDERED** that Mancilla & Fantone, LLP shall send an email to the Court at

ame_orders@njd.uscourts.gov that includes Vivian Liu's mailing address and telephone number;

and it is further

**ORDERED** that counsel's withdrawal shall not take effect until counsel files proof of

service and provides the Court with Vivian Liu's contact information, as set forth above; and it is

further

**ORDERED** that Vivian Liu shall have thirty days to secure new counsel or file a letter

stating her intention to represent herself. If Ms. Liu does neither within 30 days, she will be

deemed to enter an appearance pro se; and it is further

**ORDERED** that the Court will hold a status conference on July 20, 2022, at 2:30 p.m. To

join the conference, dial 866-434-5269 and enter access code 1874589#.


 /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge

# EXHIBIT 2

← Reviews ⋮ ✕

**All**    Replied    Unreplied

---

**J**  **John Roesch**                                    ⓘ
3 reviews • 0 photos

★★★★★   23 weeks ago

Robert was amazing. He handled my case with great professionalism and got me the best possible result that we could have achieved. I will be using him as my attorney for all of my business and personal matters going forward.

↩ **Reply**

---

**N**  **Nathan Barba**                                   ⓘ
0 reviews • 0 photos

★★★★★   28 weeks ago

↩ **Reply**

---

  **David LaViola**                   ⓘ
1 review • 0 photos

★★★★★   29 weeks ago

The only time anyone ever cares about legal representation is the time they need it most, and that time you'll be so grateful you're represented by Mancilla & Fantone LLP. With expertise backed tenacity the firm helped me to avoid signing a lack luster severance agreement in lieu of a much much more favorably negotiated settlement. This is just one of several examples of how the firm has come through from me through the years, and why I keep coming back. It's like finding a great mechanic, once you find one you'll never look elsewhere.

↩ **Reply**

Reviews

**All**    Replied    Unreplied

state that he knew would get dismissed. I spoke with other lawyers who confirmed that many of the things Robert told me were lies. He repeatedly insisted on doubling the size of retainer from 10k to 20k, he refused to file paper work for the case unless I doubled the retainer. He held onto my retainer for 3 months after our client-attorney relationship ended.

Robert is one of the best liars I've ever met, he will manipulate you and advise you to do what makes him the most money. He acts like he wants to help you but he's a money hungry lawyer who lies to and takes advantage of clients.

↩ Reply

---

 **Angela Inzerillo**
2 reviews • 0 photos                                                      

★★★★★  Nov 10, 2022

Robert and Andrew had the legal acumen to conquer a bogus lawsuit and it never got legs....
View full review

↩ Reply

---

 **Dan Wender**
1 review • 0 photos                                                      

★★★★★  Oct 28, 2022

Andrew and Robert have been my attorneys since I started my business in 2013 and have been 100% mission critical in my company's success.

Everything from creating my operating agreement, to writing creative, sophisticated contracts, to litigation, they have had my back and helped my business prosper. If you are a small business (or an individual, they have also helped my family through thick and thin), looking to grow with a brilliant, creative, trusted legal team, look no further than Mancilla & Fantone LLP.

FILED: NEW YORK COUNTY CLERK 08/09/2024 08:34 PM    INDEX NO. 450521/2024
NYSCEF DOC. NO. 168    RECEIVED NYSCEF: 08/09/2024

← **Reviews**    ⋮  ✕

**All**    Replied    Unreplied

---

 **Marie D'ovidio**    ⊙
7 reviews • 0 photos

★★★★★  Oct 24, 2022

Highly recommend!! Andrew has been super helpful and reassuring in my case, couldn't wish for a better attorney to represent me! Thanks again

↰ **Reply**

---

 **Mark 2N**    ⊙
Local Guide • 24 reviews • 93 photos

★★★★★  Oct 20, 2022

Andrew did a great job. He was referred by my other lawyer, saying "Andrew is the man to take care of your case." which he dismissed my charge easily.

↰ **Reply**

---

 **Simone Renee**    ⊙
5 reviews • 0 photos

★★★★★  Oct 5, 2022

Robert was the best! He kept me informed throughout the entire process and addressed any concerns with confidence. I would absolutely work with him again. WE WON!

↰ **Reply**

---

 **Lisa Smith Haigler**    ⊙
1 review • 0 photos

Case 2:20-cv-20268-MCA-AME    Document 55-3    Filed 07/02/25    Page 29 of 30 PageID: 543

← Reviews                                                                ⋮    ✕

All          Replied          Unreplied

---

 **Lisa Smith Haigler**                                            ⊘
1 review • 0 photos

★★★★★   Sep 20, 2022

Robert will be my first call if I ever need their services again. Robert was extremely
professional, compassionate and knowledgeable.
During an extremely stressful time, Robert was able to translate the "legalease", outline a plan
and give me the confidence I needed to move forward.
THANK YOU!

↩ Reply

---

**C**  **Cherie Wrigley**                                                     ⊘
2 reviews • 0 photos

★★★★★   Sep 18, 2022

I don't usually write Google reviews but I felt it was very important in this case.
I don't know who the person posting as A Mous is but we can't
be speaking about the same attorney.
I have met many attorneys in my lifetime and Robert is definitely up there as a TEN!
He is efficient , honest capable and one of the most trustworthy men I know.
He has handled numerous legal issues for me .
He has litigated and won trials in two States
on my behalf. I would recommend Robert and the law firm of Mancilla and Fantone in a
heartbeat!

↩ Reply

---

 **David O'Neill**                                                 ⊘
3 reviews • 0 photos

← Reviews                                                                    ⋮   ✕

**All**     Replied     Unreplied

the last 6 years.
Both Robert and Andrew are extremely consummate professionals.
I am very pleased with the legal work they have done for me and will continue to do.

↩ **Reply**

---



**Barry Oreilly**
4 reviews · 0 photos                                                          

★★★★★  Sep 9, 2022

The lawfirm represented me when I was renegotiating my business lease post covid.I was 100% satisfied with their professionalism and the lease they negotiated for me.

↩ **Reply**

---

**N**

**NICK**
1 review · 0 photos                                                          ⓘ

★★★★★  Aug 3, 2022

Let me start off by saying that I've personally hired and been in the courtroom with a number of attorneys from low level to high class offenses, for myself and others. No attorney has compared or even come close to the diligence that this law firm demonstrates both inside and outside of the courtroom. Robert Fantone really became my go to for just about anything lawful and advice related. Robert has been in the courtroom for me countless times, fought and won my hearings and multiple trials. He is extremely professional, knowledgeable, resourceful, dedicated, explicated, and honest. Robert Fantone is built to WIN!

* I didn't even directly hire Andrew Mancilla but he was behind the scenes looking my case over and I was shocked to see him in the courtroom vigorously proficient and willing to help.

Amazing Law Firm